NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RIGOBERTO O., *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY,
B.I., M.I., A.O., G.O., *Appellees*.

No. 1 CA-JV 13-0251
FILED 5-13-2014

Appeal from the Superior Court in Maricopa County
No. JD510142
The Honorable Brian K. Ishikawa, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee* ADES

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Diane M. Johnsen joined.

**J O N E S**, Judge:

¶1          Rigoberto O. (Father) appeals the trial court's order terminating parental rights to his four children.[1] On appeal, Father asserts insufficient evidence supported the termination order granted under Arizona Revised Statutes (A.R.S.) section 8-533(B) (2014).[2] For the following reasons, we affirm the trial court's decision.

## FACTS AND PROCEDURAL HISTORY

### I.      Initial Family Involvement with ADES

¶2          In May 2012, the Arizona Department of Economic Security (ADES) received a report that a mother had given birth to a substance exposed newborn (Infant M) who tested positive for opiates. Subsequently, ADES placed Infant M in a foster home licensed to work with substance exposed newborns. The hospital expressed concern over the mother's ability to take care of herself and her children, whom ADES identified at that time as Infant M (4 days of age); B (approximately 1.5 years of age); G (3 years of age); A (5 years of years); and A.R. (13 years of age). A sixth child, A.Z. (10 years of age) lived on and off with her maternal grandmother. ADES reported concern the family was living in a motel room with a single bed.

¶3          Father reported he had not seen any issues with Mother's ability to take care of the children. He also indicated Mother left with the children after he and Mother had an altercation, and he did not know their whereabouts. After Father was served with a temporary custody

---

[1] The trial court also terminated mother's parental rights. Mother did not appeal the termination order, and is not part of this appeal.
[2] Absent material revisions, we cite the current version of a statute.

notice,[3] he left the motel. Unaware of either Mother's or Father's whereabouts, ADES filed a police report in search of the children.

¶4 An initial dependency hearing took place on June 6, 2012, at which time ADES requested a continuance on the ground it was unable to serve the parents with notice of the hearing. Accordingly, the trial court set the dependency hearing for August 3, 2012. At the dependency hearing, the trial court found notice was completed for the parents, and Mother and Father failed to appear without good cause. The trial court further found Mother was unable to parent the children due to substance abuse issues and Father was unable to parent due to neglect and failure to protect. The case plan at that time remained reunification of the family.

¶5 On August 9, 2012, the Tempe Police Department located B, G, and A, but was unable to locate A.R. Subsequently, ADES petitioned the trial court for physical custody of B, G, and A, and for a pick-up order for A.R. On September 11, 2012, the trial court granted both orders. In its report filed on October 17, 2012, the Foster Care Review Board reported the parents were not participating in services, A.R. was on runaway status, and children G, B, A, and Infant M had been placed in foster care.[4]

II. **Reunification Plan**

¶6 In its October 25, 2012 report, ADES identified the case plan goal as family reunification, and described the behavioral changes Father would be required to exhibit in order to resolve the safety threats and risk factors preventing family reunification. ADES said Father must demonstrate: 1) he had procured stable housing as indicated by a consistent address for at least 6 months; 2) he had stable income, meaning regular employment for 6 months or more; 3) he did not use illegal substances, as illustrated through clean drug test results for at least 6 months; 4) he appropriately addressed substance abuse issues by consistently participating in the Terros Family First Program; 5) he was able to appropriately care for children, demonstrated by enrolling in community parenting class and/or parent aide parenting skills class; 6) he actively participated while visiting his children with a case aide; 7) he was able to be an effective and stable parent by participating in a psychological

---

[3] Ariz. Rev. Stat. (A.R.S.) § 8-823(A) (2014).

[4] A severance hearing was ultimately held on August 16, 2013.

evaluation and complying with its recommendations; 8) he was actively involved in the children's lives and activities; and 9) he cooperated with and remained in consistent contact with ADES regarding changes in his circumstances, including changes in address and missed appointments.

¶7        To assist Father in his reunification efforts with his children, ADES offered substance abuse testing, substance abuse assessment, parenting classes, parent aide for parenting skills, case aide services for visitation, a psychological consultation session, psychological evaluation, and transportation services in the form of cab services and bus passes.

III.    **Father's Efforts Toward Reunification**

        A.    Stable Housing and Income

¶8        As indicated in the reunification plan, Father was required to provide stable income and housing as demonstrated by a consistent address and regular employment for at least six months.  At the time of the severance hearing in August 2013, the ADES case manager testified Father had not demonstrated he had secured stable housing for the children.  Corroborating the case worker's testimony, Father testified he had been living in a three-bedroom apartment with two roommates for the six weeks preceding the hearing, and when the four children were returned to him, there would be space for another mattress for the children in his bedroom though he currently did not possess a crib.  The case worker also noted that although Father indicated he was employed at a local carwash, he had not provided paystubs or employment verification.  Father also testified he was scheduled for an interview at a convenience store, where he intended to work the 2:00 p.m. to 10:00 p.m. shift.

        B.    Drug Testing

¶9        The reunification plan also required Father to demonstrate he was drug free by providing clean drug test results for six months, and to address substance abuse issues by participating in Terros Family First Program.  To assist Father, ADES offered substance abuse testing and assessment.

¶10        ADES reported Father missed 50-60% of the scheduled drug tests.  Although Father tested negative for the tests he did undertake, ADES remained concerned for substance abuse issues as ADES considers missed tests as positive results.  In addition, Father arrived at a supervised visitation smelling of alcohol and admitted to consuming alcohol prior to

the visit. Due to Father's missed substance abuse testing and admission of alcohol consumption prior to a scheduled visitation, ADES concluded Father failed to demonstrate his sobriety necessary to the reunification plan.

¶11 Father testified he was unable to undergo substance abuse testing 100% of the time due to ADES' failure to provide him with bus passes. The case worker confirmed ADES did not have bus passes to give Father on at least three occasions, but also advised the court he had missed substance abuse testing on at least thirty occasions, and ADES had informed Father to contact their office when he needed transportation assistance. In a prior report dated October 25, 2012, ADES stated it had offered transportation to Father in the form of bus passes and cab services.

¶12 In November 2012, Father attended his first scheduled appointment with the Terros Family First Program. Based upon the intake appointment, Terros concluded Father did not qualify for substance abuse treatment and did not recommend him for further services. Terros did recommend, however, Father receive individual counseling, and Father expressed his intention to seek counseling with his tribe. When Father did not provide documentation to ADES that he was receiving counseling from his tribe, ADES offered to request individual counseling services for him.

### C. Parenting Classes

¶13 Father's reunification plan further included he demonstrate the ability to care for his children by attending parenting classes. ADES initially referred Father to parenting classes in the community. However, in October 2012, Father informed the case manager he preferred taking parenting skills sessions through the assigned parenting aide. Due to changes in service delivery rules, ADES provided a parent aide to Father several months later in June 2013. While waiting for an aide to be assigned to him, Father contacted his tribe for parenting classes in February and March of 2013, only to find the tribe did not provide parenting classes. ADES informed Father of parenting classes in the community but Father never signed up.

### D. Visitation and Active Involvement with Children

¶14 Father's reunification plan required his active participation in visitation with the children and that he demonstrate involvement in the children's lives and activities. In October 2012, ADES assigned a case aide to Father, and he began visitation sessions with his children two days

later. In November 2012, Father asked to end visitations with the two youngest children, as he felt the two year old and six month old children did not share a bond with him. At the time of trial, Father had not visited the two youngest children since November 2012. However, Father consistently visited with the two older children until July 2013, when Parent Aide Services denied visitation to Father for not contacting the parent aide assigned to him for visitation and parenting skills sessions.

¶15 According to ADES, Father's active involvement with the children was particularly necessary given that two of the children had special needs. Infant M had been referred for speech therapy and was anticipated to need physical and occupational therapies. The case worker testified Father had not attended Infant M's therapy sessions while acknowledging ADES had not asked Father to attend these sessions. In addition, A received special education and attended kindergarten for the third time. Although Father was aware of A's special education needs, Father had not asked to meet with A's teachers or participated in development of her IEP.

      E.      Psychological Evaluation and Compliance with Recommendations

¶16 Finally, the reunification plan required Father to demonstrate the ability to be an effective and stable parent by participating in a psychological evaluation and complying with its recommendations. In September 2012, ADES referred Father for a psychological consultation. Following that consultation, the psychologist recommended Father undergo a psychological evaluation. As a result, ADES referred Father for that evaluation, which he received in March 2013. The psychological evaluation determined Father suffered a depressive disorder that, if left untreated, would impair his ability to parent his children. As it was imperative that Father manage his depressive symptoms to avoid placing his children at risk of neglect, the psychologist recommended a psychiatric evaluation and individual therapy.

¶17 The evaluation also observed that, due to Father's inconsistent compliance with his drug testing, and in the event Father was using drugs, the children remained at risk of endangerment and neglect. Accordingly, the evaluating psychologist recommended Father demonstrate twelve months of verified abstinence from drugs and alcohol to minimize the possibility of his neglect of the children. In addition, the psychologist recommended Father participate in parenting classes and

individualized counseling. Finally, it was the psychologist's clinical opinion the children would be at risk in Father's care unless Father successfully completed all the recommended services.

¶18        Although Terros similarly recommended Father seek individualized counseling, Father decided to obtain psychiatric evaluation and counseling services from his tribe.  When Father did not provide documentation of counseling with his tribe, ADES again offered to provide counseling.  Based upon Father's failure to document either a psychiatric evaluation or counseling, ADES concluded Father did not receive the psychiatric services recommended in the psychological evaluation report and required by the reunification plan.

IV.    **Termination of Parental Rights**

¶19        Based upon the foregoing, on February 8, 2013, ADES moved to terminate Father's parent-child relationship with the two youngest children, Infant M and B, on the ground he had substantially neglected or willfully refused to remedy the circumstances that had caused the children to be in out-of-home placement for a cumulative period of six months or longer.  A.R.S. § 8-533(B)(8)(b).  On March 11, 2013, ADES filed a similar motion to terminate Father's parent-child relationship with the older children, A and G, alleging Father had substantially neglected or willfully refused to remedy the circumstances that caused the children to be in an out-of-home placement for a cumulative period of nine months or more. A.R.S. § 8-533(B)(8)(a).  ADES asserted termination of the parent-child relationship was in the best interests of the four children as they could then be allowed to gain permanency through adoption.

¶20        The trial court held a contested hearing on both motions on August 16, 2013.  In its subsequent September 18, 2013 order, the trial court found Father had substantially neglected or willfully refused to remedy the circumstances leading to the placement of the children for the required statutory periods although ADES had offered sufficient services aimed at reuniting the family. In addition, the trial court determined termination was in the best interests of the children as it would allow them to be adopted. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2014), and 12-2101(A) (2014).

## DISCUSSION

¶21 In termination proceedings, the trial court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). Therefore, "[w]e will not disturb the juvenile court's order severing parental rights unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998). The juvenile court may terminate a parent-child relationship only upon finding clear and convincing evidence supports at least one statutory ground for termination under A.R.S. § 8-533(B), and a preponderance of the evidence shows severance to be in the child's best interests. *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587, ¶ 7, 177 P.3d 327, 329 (App. 2008); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004).

¶22 On appeal, Father asserts: 1) ADES did not make diligent efforts to provide appropriate reunification services; 2) Father's participation in reunification services remedied the circumstances existing at the time ADES assumed custody of his children; 3) Father did not willfully refuse or substantially neglect to participate in reunification services; and 4) termination of Father's parental rights was not in the best interests of the children.

      A.     Father's Assertion ADES Failed to Make Diligent Efforts to Provide Reunification Services

¶23 Under A.R.S. § 8-533(B)(8), the agency responsible for the child's care must have made a "diligent effort" to provide reunification services. The State is not required to offer every possible service or "to ensure that a parent participates in each service it offers." *In re Appeal in Maricopa Cnty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994). However, the State is obligated to undertake rehabilitative measures offering a reasonable possibility of success. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34, 971 P.2d 1046, 1053 (App. 1999) (finding the State failed to make a reasonable rehabilitative effort to preserve a family before seeking a severance on mental illness grounds).

¶24 ADES made diligent efforts to provide reunification services to Father. ADES provided substance abuse testing and assessment by

referring Father to Terros Family First Program. In addition, ADES offered urinalysis testing as well as transportation to the testing site in the form of bus passes and cab rides in order to assist Father to demonstrate he was substance free as required by the reunification plan and by Father's evaluating psychologist.

¶25 Toward reuniting the children with Father, ADES also offered community and individual parenting classes, and supervised visitation services through a case aide. To assist Father in demonstrating his ability to be an effective and stable parent, ADES referred Father for a psychological consultation and provided the recommended follow-up psychological evaluation. When the evaluating psychologist recommended a psychiatric evaluation and individualized counseling to address Father's depression, which could potentially impact his ability to parent and place his children at risk of neglect, ADES offered the requisite mental health services. The record is well established that ADES made numerous and diligent efforts to provide substantial and appropriate reunification services to Father and thereby met its obligation to make diligent efforts to provide Father with a reasonable likelihood of success toward reuniting with his children.

      B.     Father's Failure to Remedy Circumstances Existing at the Time of Out-of-Home Placement

¶26 Father next asserts he did not willfully refuse or substantially neglect to remedy the circumstances that caused the children to be in out-of-home placement, or failed to participate in reunification services. Evidence in support of termination of the parent-child relationship may be established when a "child who is under three years of age has been in an out-of-home placement for a cumulative total period of six months or longer" and "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, including refusal to participate in reunification services offered by the department." A.R.S. § 8-533(B)(8)(b). Evidence in support of termination of the parent-child relationship for children (older than three years of age) who have been in out-of-home placement for a cumulative total period of nine months or longer may be established when "the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." A.R.S. § 8-533(B)(8)(a).

¶27 The trial court found, and review of the record substantiates, Father substantially neglected or willfully refused to remedy the

circumstances that caused the children to be in out-of-home placement by refusing to participate in reunification services offered by ADES. See A.R.S. § 8-533(B)(8)(a);A.R.S. § 8-533(B)(8)(b). At the time of the August 2013 hearing, Father failed to demonstrate stable housing or employment; consistent substance abuse testing; participation in parenting classes; appropriate involvement in special education or therapy needs of his children; or the reception of recommended mental health services. Based upon the record, we conclude reasonable evidence supported the trial court's determination.

> C.   Father's Assertion that Termination Was Not in the Best Interests of the Children

¶28        Finally, Father argues termination was not in the best interests of the children as they should be given the opportunity to continue to have a relationship with him. A parent-child relationship may only be terminated upon a showing by a preponderance of the evidence that severance is in the best interests of the child. *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. at 587, ¶ 7, 177 P.3d at 329. Such a showing may be made by evidence that the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6, 100 P.3d 943, 945 (App. 2004).

¶29        The trial court found termination was in the children's best interests as termination allowed the children permanency through adoption. In addition, the trial court identified the children's placement with licensed foster parents as the least restrictive placement consistent with the children's needs. We agree.

¶30        At the time of the August 2013 hearing, ADES placed Infant M and A together in a licensed foster home. Likewise, child B and G were placed in a licensed foster home, and the foster parents coordinated visits between the siblings once or twice a month. Regarding permanent placement for the children, ADES reported Infant M's current foster parents were a potential adoptive home for the infant, and the remaining children in foster care were also adoptable. The maternal grandparents expressed interest in becoming a permanent placement for A and G, and a paternal great aunt was interested in providing a permanent placement for B.

¶31        Importantly, ADES reported the foster homes were meeting all the children's basic, educational, and developmental needs, which was

particularly necessary for the two children with special needs. In weighing the best interests of the children in relation to maintaining the parent-child relationship, the trial court "also may consider whether the current placement is meeting the child's needs, and may take into account that '[i]n most cases, the presence of a statutory ground will have a negative effect on the children.'" *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23, 312 P.3d 861, 866 (App. 2013) (citing *In re Maricopa Cnty. Juvenile Action No. JS−6831*, 155 Ariz. 556, 559, 748 P.2d 785, 788 (App. 1988)) (internal citation omitted).

¶32　　　Having determined ADES had made diligent efforts to reunite the family but that Father had substantially neglected or willfully refused to remedy the circumstances causing the children to be in out-of-home placement, we conclude the court's termination of the parent-child relationship between Father and the children was in the children's best interests.

## CONCLUSION

¶33　　　For the foregoing reasons, we affirm the trial court's termination order.



Ruth A. Willingham · Clerk of the Court
FILED: MJT