NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEPHANIE M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.C., X.C., A.C., *Appellees*.

No. 1 CA-JV 18-0046
FILED 9-13-2018

Appeal from the Superior Court in La Paz County
No. S1500JD201500013
The Honorable Matthew G. Newman, Judge

**AFFIRMED**

COUNSEL

Law Offices of Heather C. Wellborn, P.C., Lake Havasu City
By Heather C. Wellborn
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

**W I N T H R O P**, Judge:

¶1 Stephanie M. ("Mother") appeals the juvenile court's order terminating her parental rights to S.C., X.C., and A.C. ("the children") on the statutory grounds of chronic substance abuse and fifteen months' out-of-home placement.[1] *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8)(c). Mother challenges the sufficiency of the evidence supporting the grounds for severance and the court's finding that severance was in the children's best interests. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

¶2 Mother is the biological mother of the children, who were born in 2012 (S.C.), 2014 (X.C.), and 2015 (A.C.). Mother has a history of substance abuse—including methamphetamine, marijuana, cocaine, and alcohol. Her methamphetamine use began at age twenty-eight, approximately eight years before the severance trial in this case.

¶3 In August 2015, the Department of Child Safety ("DCS") took temporary physical custody of the children and placed them in a foster home after Mother left them with a friend for two weeks without providing food, baby formula, diapers, authorization for the children's medical care, or Mother's contact information. Mother later admitted she had been using methamphetamine during the months before the children's removal.

¶4 On September 2, 2015, DCS filed a dependency petition, alleging the children were dependent based on Mother's substance abuse and neglect. The next day, Mother was arrested, and she later pled guilty to attempted transportation of dangerous drugs (methamphetamine) for sale. Meanwhile, at Mother's request, the dependency matter was transferred from Maricopa County to La Paz County. Mother denied the dependency allegations but ultimately submitted the issue of dependency to the juvenile court, which found the children dependent as to Mother in February 2016. The court approved a case plan of family reunification concurrent with severance and adoption.

---

[1] The juvenile court also terminated the parental rights of the children's fathers, who are not parties to this appeal.

[2] We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶5 In furtherance of the case plan, DCS offered Mother numerous reunification services, including substance abuse testing and treatment, mental health services, parenting classes, supervised visitation, and transportation. Initially, Mother was noncompliant with services—she did not maintain contact with her DCS case manager, engage in visitation, or drug test. On February 2, 2016, police officers again arrested her, this time for possession and transportation or sale of methamphetamine.

¶6 Between February and July 2016, Mother's compliance with services minimally improved. She completed a psychological evaluation in May 2016, but she failed her parenting classes and failed to consistently attend supervised visits with the children, drug test, or maintain contact with her DCS case manager.

¶7 Between July and November 2016, however, Mother found employment and housing, and her engagement with DCS services improved. As a probation requirement for her attempted transportation of dangerous drugs for sale conviction, Mother began to submit to drug testing, and she initially tested negative, although she often missed weekly testing, which she blamed on a lack of transportation. Her probation officer, who was unaware Mother could receive transportation services from DCS for drug testing, accommodated her with a relaxed monthly testing schedule. Mother's case manager also began thinking about returning the children to an in-home dependency.

¶8 On September 1, 2016, however, a probation officer found two glass pipes with burnt residue in Mother's bedroom. Also, on December 9, 2016, after missing numerous scheduled drug tests, Mother tested positive for methamphetamine. Despite two case managers' efforts to assist her, Mother failed to contact DCS entirely for approximately three months in early 2017. Her case manager finally initiated contact with her when she appeared at a March 31 hearing dressed in "jail attire" after yet another arrest, on this occasion for possession of drug paraphernalia and driving on a suspended license. The police report indicated Mother tried to use her foot to conceal a glass pipe containing "a usable quantity of suspected methamphetamine." Also, a cloth bag in the vehicle contained multiple broken glass pipes with suspected methamphetamine residue.

¶9 On April 11, 2017, the juvenile court changed the case plan to severance and adoption. Ten days later, DCS moved to terminate Mother's parental rights to the children on chronic substance abuse and fifteen-month out-of-home placement grounds. Mother denied the allegations, and the court set trial on the motion for August 24, 2017.

¶10         Meanwhile, except for a one-week furlough, Mother remained in custody until July 24, 2017.  During that time and after her release, Mother failed to complete any DCS-offered services or treatment for substance abuse, and after her release from custody, she contacted her substance abuse counselor only once—on July 24.  Mother admitted to her probation officer that she used controlled substances after her release, and she tested positive for methamphetamine on August 17, just one week before the termination hearing.  On September 14, Mother finally completed an intake for substance abuse treatment, but she missed the one treatment session scheduled for her before the second day of the severance trial.

¶11         On August 24 and September 20, 2017, the juvenile court held trial on the severance motion.  Mother's case managers and probation officer testified about Mother's failure to comply with the terms of her case plan and probation.  Psychologist Daniel Juliano, Ph.D., offered his opinion based on his May 2016 evaluation of Mother.  The children's therapist, Mary Reiss, offered opinions based on her sessions with the children, interviews with Mother, assessments of Mother's interactions with the children, and information from the children's foster placement.  At conclusion of the hearing, the court ordered the parties to submit written closing arguments, which they did.

¶12         On January 3, 2018, the court terminated Mother's parental rights after finding DCS had proved both statutory grounds alleged for severance, Mother's participation in the numerous rehabilitative services offered to her was "not in compliance with the case plan," and termination was in the children's best interests.

¶13         We have jurisdiction over Mother's timely appeal pursuant to A.R.S. § 8-235(A) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

*I.      Standard of Review*

¶14         A court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the children's best interests.  *See* A.R.S. §§ 8-533(B), -537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, 288, ¶¶ 7, 41 (2005).

¶15         As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties,

judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). Thus, the resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). Instead, we review the juvenile court's order to determine if reasonable evidence supports its factual findings. *Matthew L.*, 223 Ariz. at 549, ¶ 7.

## II. Mother's Challenges to the Court's Statutory Findings

**¶16** Mother argues the juvenile court erred in finding DCS presented evidence sufficient to support severance under A.R.S. § 8-533(B)(3), the statutory ground of chronic substance abuse.

**¶17** The juvenile court may terminate parental rights when a parent's history of chronic substance abuse renders her unable to discharge parental responsibilities "and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Severance on this ground requires a finding that DCS "made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citation omitted). Because Mother does not argue that DCS failed to make reasonable efforts to provide appropriate reunification services, she has abandoned and waived any argument in this regard. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017).

**¶18** Although long-lasting, chronic substance abuse "need not be constant to be considered chronic." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). A "temporary abstinence from drugs and alcohol does not outweigh [a parent's] significant history of abuse or h[er] consistent inability to abstain during th[e] case." *Id.* at 379, ¶ 29. A parent's failure to remedy substance abuse when faced with the imminent loss of her children is evidence the parent has not overcome her dependence on the substance. *Id.*

**¶19** The juvenile court may evaluate evidence of a parent's prior substance abuse in determining whether the ground of chronic substance abuse has been established. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶¶ 19-20 (App. 2016). In determining whether a parent's substance abuse will continue, a court may consider the parent's history of sobriety and relapse, the types of substances used, the length and frequency of use, and effects on the parent's behavior associated with the substance abuse.

*Id.* at ¶ 20. The circumstances surrounding periods of sobriety are also important; for example, a temporary abstinence compelled by incarceration or other confinement does not demonstrate that a parent is able to maintain sobriety in a non-custodial setting consistent with the conditions under which parenting occurs. *See Raymond F.*, 224 Ariz. at 379, ¶ 29. Ultimately, "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S.*, 240 Ariz. at 287, ¶ 17 (citations omitted).

¶20　　　　In this case, reasonable evidence supports the juvenile court's findings that Mother's substance abuse rendered her unable to effectively parent and the condition was likely to continue indefinitely. The record shows that, in addition to other illegal substances, Mother used methamphetamine for at least eight years. Although she only tested positive for methamphetamine use twice during her case, she failed to comply with testing (and other services) for much of the time. Further, a probation officer found two glass pipes with drug residue in her bedroom during the time she claims she was not using methamphetamine. Also, as the juvenile court noted, "Mother appeared knowledgeable about how probationers try to 'time' their drug use to test negative when needed. It suggests that her drug use may in fact be even more than conclusively shown."

¶21　　　　The record supports the conclusion that Mother only complied with her case plan and maintained at least an appearance of sobriety when her circumstances were relatively challenge-free. The juvenile court considered that "[M]other throughout this case has at times been homeless, used methamphetamine, was arrested and prosecuted for criminal conduct, failed to do drug testing and/or treatment, and failed to maintain visitations with her children." As Dr. Juliano opined, Mother's history of "self-defeating behavior" often "place[s] her children at risk," and she lacks insight into her behavior and is likely to keep repeating patterns of problematic behavior unless she engages in treatment to gain insight and "develop alternative pathways for problem and conflict resolution." As the court recognized, however, Mother attempted to make excuses for her relapses and failed to take advantage of numerous offered services, "even while in jail." Further, the court found "deeply disturbing" Mother's admission to using methamphetamine shortly before her severance trial, and concluded that the circumstances that placed the children at risk were likely to continue for a prolonged, indeterminate period. The juvenile court's findings and conclusions are fully supported by reasonable evidence in the record.

¶22            Mother also argues the juvenile court erred in finding DCS presented evidence sufficient to support severance under A.R.S. § 8-533(B)(8)(c), the fifteen-month time-in-care ground.   "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds."  *Jesus M.*, 203 Ariz. at 280, ¶ 3 (citations omitted); *see also* A.R.S. § 8-533(B) (requiring that evidence sufficient to justify the termination of the parent-child relationship include "any one" of the enumerated termination grounds).  Accordingly, we do not address this argument.

            III.    *Best Interests*

¶23            Mother also argues the juvenile court erred in finding that severance was in the children's best interests.

¶24            To prove severance is in a child's best interest, DCS must show that severance either provides an affirmative benefit or eliminates a detriment or potential harm to the child if the relationship between the parent and the child continues.  *See Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990); *Oscar O.*, 209 Ariz. at 334, ¶ 6.   The best interest requirement may be met if a current adoptive plan exists for the child or even if DCS can show that the child is adoptable.  *See JS–500274*, 167 Ariz. at 6; *Maricopa Cty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352 (App. 1994).  The juvenile court may also consider evidence that an existing placement is meeting the needs of the child in determining that severance is in a child's best interest.  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).   Additionally, the court may consider that, in most cases, "the presence of a statutory ground [for severance] will have a negative effect on the children."  *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013) (quoting *Maricopa Cty. Juv. Action No. JS–6831*, 155 Ariz. 556, 559 (App. 1988)).

¶25            In this case, the juvenile court found both that severing Mother's parental rights would affirmatively benefit the children and that the children would be harmed by continuation of their relationship with Mother.  The record supports the court's findings.  The children's therapist, Mary Reiss, stated the children were well-adjusted to and had bonded with their current placement, which was willing to adopt them.  When asked if the children were bonded with Mother, however, Reiss stated the children did not "seek her out at all for any interactions," and showed no indication of being "distressed over" being separated from her.   Further, Reiss cautioned that visitation with Mother was causing the children to regress,

leading to physical, behavioral, and emotional problems. The record demonstrates both affirmative benefits to the children from severance and the elimination of detriments or potential harm that would exist if the parent-child relationships were not severed. *See JS–500274*, 167 Ariz. at 5.

## CONCLUSION

¶26 The juvenile court's order terminating Mother's parental rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA