NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MANUEL T., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.A., B.A., *Appellees.*

No. 1 CA-JV 18-0200
FILED 12-4-2018

Appeal from the Superior Court in Maricopa County
No. JD30722
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones L.L.C., Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Vice Chief Judge Peter B. Swann and Judge David W. Weinzweig joined.

---

**J O N E S**, Judge:

**¶1**　　　　Manuel T. (Father) appeals the juvenile court's order terminating his parental rights to M.A. and B.A. (the Children), arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence and that severance was in the Children's best interests by a preponderance of the evidence.　For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　In June 2015, DCS received a report that B.A. had been sexually abused.[1]　During the subsequent investigation, all four of Father's daughters, then ages fourteen, twelve, nine, and four, disclosed sexual abuse by family members.　DCS identified a general lack of supervision and "pattern of the children residing with family/friends and [being] harmed while in their care" and removed the sisters from their parents' care.　DCS filed a petition alleging all four girls were dependent as to Father and their mother (Mother) on the grounds of neglect.　Although Father contested the allegations of the petition, he did not appear for trial, and the juvenile court adjudicated the Children dependent and adopted a case plan of family reunification.[2]

---

[1]　　　"[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002)).

[2]　　　The four sisters were also adjudicated dependent as to Mother in October 2015.　Mother's parental rights to the Children were terminated in May 2018, and her appeal was dismissed after her counsel avowed he had identified no non-frivolous issues for this Court's review.　At the time of

¶3            Father was referred for supervised visitation, parent aide services, individual counseling with an emphasis on domestic violence and anger management, and transportation assistance — services he initially declined.  Father eventually engaged in counseling in May 2016.  He only began visiting the Children regularly in September 2016 — more than a year after their removal.  Father successfully completed parent aide services in December 2016 but became irate and violent when the oldest daughter refused to attend visitation.  Father would also cancel visitation altogether if the oldest daughter was not available to assist him in parenting the younger children.  Accordingly, DCS reduced the frequency of visitation and recommended he continue with individual counseling.

¶4            DCS also expressed concern regarding Father's ability to maintain stable employment and obtain appropriate housing.  In January 2017, DCS referred Father to a specialist, who provided him with community resources for housing assistance and helped him complete an application for Section 8 housing.  In May, DCS advised Father it could assist him with a housing subsidy if he provided appropriate documentation.  However, Father did not obtain the necessary information.  Father's Section 8 housing application was also denied because it was incomplete.  He did not reapply or otherwise follow up with DCS or the specialist.

¶5            After missing scheduled appointments in June and November 2016, Father finally underwent a psychological evaluation in May 2017.  At the evaluation, Father reported he could and would parent the Children but for his lack of suitable housing.  But the psychologist found Father was making no effort to address this issue, choosing instead to blame DCS for not simply providing him a place to live.  She also identified "numerous other barriers to parenting," including undetermined sexual maladjustment allegations, possible substance abuse, personality disturbances related to repressed anger and hostility, and a lack of effort that reflected "an indirect expression of his acknowledgment that single parenting is overwhelming for him at his age and under his circumstances." The psychologist concluded that any child in Father's care remained at risk for further neglect and Father's prognosis for becoming a minimally adequate parent in the foreseeable future was poor given his lack of accountability and insight into the circumstances.

---

our review, the Children's two older sisters remained in out-of-home care but refused to consent to a change in case plan to severance and adoption.

**¶6** The same psychologist performed a bonding assessment the following August. She found the four sisters highly bonded to each other and Father and suggested it would not be in their best interests to be separated. Although these findings were consistent with reports of positive interaction at visitation, Father's participation in rehabilitative services waned as he struggled with physical ailments and eventually underwent back surgery requiring a lengthy recovery period. Additionally, despite being advised housing was a significant barrier to reunification, Father refused to secure appropriate housing unless and until the Children were returned to his care.

**¶7** By November 2017, Father had ceased all contact with DCS and stopped participating in services, except for visitation. The juvenile court changed the case plan to severance and adoption in December. DCS immediately moved to terminate Father's parental rights, alleging severance was warranted based upon the time the Children had been in out-of-home care. One month before trial, Father became irate in the hallway after a court hearing when the DCS case manager suggested specific anger management counseling.

**¶8** At trial, the DCS case manager acknowledged Father's partial participation in services but identified unresolved concerns regarding Father's lack of stable employment and housing, anger issues, and failure to recognize or understand why the Children were placed in out-of-home care. Like the psychologist, the case manager believed Father would not be able to parent in the foreseeable future because he was not prioritizing reunification tasks. Notably, the case manager did not believe the Children were safe in Father's care, notwithstanding the housing issue, and believed, in the absence of any apparent behavioral changes, "the older children will continue to parent the younger children." She testified the Children were adoptable and in an adoptive placement who was willing to facilitate continued contact between the Children and their older sisters. She also acknowledged that even though separating the sisters was not ideal, it was nonetheless in the Children's best interests to pursue a plan that would give them an opportunity for stability and permanency, rather than leaving them "to linger in the foster care system."

**¶9** Father testified he believed he could provide for the Children financially and would obtain appropriate housing "immediately" after they were returned to his care. He denied any domestic violence or anger issues and expressed concern regarding the Children being separated from their older sisters.

**¶10** After taking the matter under advisement, the juvenile court found DCS proved by clear and convincing evidence that it had made diligent efforts to provide appropriate reunification services but termination of Father's parental rights was warranted because he had been unable to remedy the circumstances causing the Children to be in an out-of-home placement for longer than the statutory period and there was a substantial likelihood he would be unable to parent in the near future. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(c).[3] The court also found severance was in the Children's best interests and entered an order terminating Father's parental rights. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### I. DCS Proved the Grounds for Severance by Clear and Convincing Evidence.

**¶11** Father argues the juvenile court erred in concluding DCS proved the statutory grounds for severance by clear and convincing evidence. Specifically, Father contends insufficient evidence supports the court's findings that: (1) DCS made reasonable efforts to assist Father in obtaining appropriate housing for the Children, which he characterizes as the "main obstacle to reunification," and (2) Father's housing at the time of trial was not suitable for the Children. We defer to the court's factual findings, including those regarding DCS's diligence in providing services, so long as they are supported by substantial evidence. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81-82, ¶¶ 13, 16 (App. 2005) (citations omitted); *Jesus M.*, 203 Ariz. at 280, ¶ 4 (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000), and *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997)).

**¶12** Substantial evidence supports the juvenile court's findings here. Father himself testified he could easily obtain and afford suitable housing and would do so "immediately" if the Children were returned to his care. Father also testified the Children could not live with him in the hotel room he currently occupied. Although DCS cannot prove termination is warranted without first making reasonable efforts to preserve the family, it cannot force a parent to take advantage of the services offered or perform required reunification tasks. *See Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227

---

[3] Absent material changes from the relevant date, we cite the current version of rules and statutes.

Ariz. 415, 422, 423, ¶¶ 27, 34 (App. 2011) (citing *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)). The record supports the court's finding that it was not a lack of services, but a lack of will, that kept Father from obtaining appropriate housing. We find no error.

**¶13**         Father does not dispute the remaining findings in the juvenile court's order or argue they are insufficient to warrant termination. Accordingly, the court did not err in concluding DCS proved severance was warranted based upon his failure to remedy the circumstances causing the Children to be in out-of-home care for the statutory period.

## II.     DCS Proved Severance was in the Children's Best Interests by a Preponderance of the Evidence.

**¶14**         Father argues the juvenile court erred in concluding severance was in the Children's best interests because it would also sever their legal relationship with their older sisters, with whom they share a significant bond. We review the best interests finding for an abuse of discretion and will reverse only if "as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof." *See Titus S. v. DCS*, 244 Ariz. 365, 369, ¶ 15 (App. 2018) (citing *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94-95, ¶¶ 9-10 (App. 2009)).

**¶15**         The existence of a bond between biological family members, "although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. DCS*, 240 Ariz. 96, 98, ¶ 12 (App. 2016) (citing *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013)). Rather, the court must consider all relevant facts and determine, on a case-by-case basis, whether a preponderance of the evidence supports a finding that the children "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004); *accord Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The benefit to the children, particularly when severance is sought based upon the length of time in an out-of-home placement, is the opportunity for permanency in lieu of remaining indefinitely in a situation where "parents maintain parental rights but refuse to assume parental responsibilities." *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988)). The juvenile court may also consider whether the presence of a statutory ground for severance will have a negative effect upon the children. *Bennigno R.*, 233 Ariz. at 350, ¶ 23 (quoting *Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988)).

¶16 The juvenile court here noted the Children had been in an out-of-home placement for nearly three years and, despite this lengthy period, Father had yet to show he was willing or able to parent them. Although Father faults the court for "not giv[ing] much weight" to the Children's bond with their sisters, we do not reweigh evidence on appeal; "[a] juvenile court as the trier of fact in a termination proceeding is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Oscar O.*, 209 Ariz. at 334, ¶ 4 (citing *Jesus M.*, 203 Ariz. at 280, ¶ 4). Moreover, the record reflects the court carefully considered "[the] risk of the four girls not being able to continue a sibling relationship," but ultimately determined it was not in the Children's best interests "to remain in the foster care system in order to prioritize their sibling relationships." Instead, the court found the Children would benefit from the opportunity to be adopted into a permanent, stable, and safe home with a placement who had been, and was committed to continue, facilitating sibling contact. The record supports these conclusions, and we find no abuse of discretion.

## CONCLUSION

¶17 The juvenile court's order terminating Father's parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

7