NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

DESIREE V.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, O.V., L.V.,
*Appellees.*

No. 1 CA-JV 20-0214
FILED 12-8-2020

Appeal from the Superior Court in Mohave County
No. L8015JD201807053
The Honorable Steven C. Moss, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

**¶1**           Desiree V. ("Mother") appeals the juvenile court's order terminating her parental rights to O.V. and L.V. (collectively "Children"). We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**           "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

**¶3**           The Department of Child Safety ("DCS") received a report that O.V., then eleven months old, had a "round burn mark below her right elbow" that was "the shape and size of a cigarette." During its investigation, DCS learned that Mother smoked methamphetamine "within arm's reach of [O.V.] every day" and that O.V. had once "picked up Mother's methamphetamine pipe from a coffee table and 'sucked on it like a straw.'"

**¶4**           DCS then arranged for Mother and O.V. to stay at a sober-living facility, but they never arrived. Instead, Mother was arrested in Nevada for domestic violence and outstanding warrants. Following her arrest, Mother consented to DCS taking custody of O.V. DCS filed a dependency petition as to O.V., and the juvenile court found the child dependent as to Mother.

**¶5**           During O.V.'s dependency, L.V. was born and tested positive for methamphetamine. DCS took temporary custody of L.V., filed a dependency petition, and the juvenile court found L.V. dependent.

**¶6**           Mother has long struggled with an addiction to methamphetamine, having used it since she was around fifteen years old. DCS referred Mother to several rehabilitation programs but her attendance at those programs was inconsistent, and she frequently tested positive for methamphetamine. She eventually completed one rehabilitation program but was unable to maintain consistent sobriety and was later arrested for

possession of methamphetamine, shoplifting, and driving on a suspended license. Mother was sentenced to a total of sixteen months' imprisonment for those offenses and for violating probation.

¶7 DCS moved to terminate Mother's rights to both Children under the neglect and chronic substance abuse statutory grounds, A.R.S. § 8-533(B)(2) and (3), and moved to terminate Mother's rights to L.V. under the six-months in out-of-home placement ground, A.R.S. § 8-533(B)(8)(b). The juvenile court held a one-day trial regarding the termination of Mother's rights as to both Children.

¶8 After the trial, the court found Mother "still had not achieved the goals of sobriety," despite completing the rehabilitation program. The court highlighted the fact that other rehabilitation programs had terminated Mother's services due to her "lack of contact and compliance and her resistance to [the program's] services." Further, the court noted Mother's drug-testing records showed that in 90 percent of her scheduled drug tests, she tested positive for methamphetamine, provided an altered sample, or failed to take a test as scheduled. The court said it was "clear that the Mother was simply testing when she desired and with whom she desired dependent upon what she thought would best benefit her."

¶9 The court also determined that DCS offered appropriate reunifications services to Mother, "including case management, case plan staffing, child and family team meetings, domestic violence counseling, parenting classes, substance abuse assessments and treatments, team decision-making, transportation, urinalysis testing, at least one hair follicle test that came back positive for methamphetamine, and visitation with the [C]hildren."

¶10 Ultimately, the court determined that DCS proved all statutory grounds by clear and convincing evidence and that termination of Mother's rights was in the Children's best interests. Mother timely appealed the court's order terminating her parental rights to the Children, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶11 The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Termination of parental rights is generally not favored and "should be considered only as a last resort." *Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 4 (1990).

**¶12**       To terminate a parent-child relationship, the juvenile court must find that clear and convincing evidence supports one of the statutory grounds for severance. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005); A.R.S. § 8-533(B).    Additionally,   the   court   must   determine   by   a preponderance of the evidence that the relationship's termination is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22. We review a trial court's termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We accept the court's findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶13**       Mother argues the juvenile court erred in finding that DCS proved the statutory grounds for termination and that termination of her parental rights was in the Children's best interests.

**¶14**       As to the chronic substance abuse ground, Mother argues only that the court erred in finding DCS made a diligent effort to provide her with reasonable reunification services.  "As an element of termination under A.R.S § 8-533(B)(3), [DCS] is required to demonstrate that it has 'made a reasonable effort to preserve the family.'" *Vanessa H. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 252, 255, ¶ 18 (App. 2007) (citation omitted).  This means that DCS must provide services to the parent "with the time and opportunity to participate in programs designed to help her become an effective parent . . . ." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  "Although [DCS] need not provide 'every conceivable service,' it must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999) (quoting *JS-501904*, 180 Ariz. at 353).  DCS is not obligated to provide futile rehabilitative measures but must undertake measures that have a "reasonable prospect of success." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34.

**¶15**       Mother specifically claims that DCS failed to make diligent efforts because Mother supposedly was not assigned a caseworker from August 2019 through early November 2019.  Mother alleges that her case plan was not sufficiently updated during that time, and she was unable to get in touch with any DCS employee to discuss her case plan.[1]

---

[1]       Mother's brief neglects to acknowledge trial testimony from a DCS caseworker who stated that Mother was, in fact, assigned another DCS

**¶16** Mother does not explain how the alleged three-month period without a DCS caseworker demonstrates that DCS did not make reasonable efforts. Instead, the juvenile court found Mother was provided reasonable case management services, and we are obligated to affirm that conclusion if any reasonable evidence supports it. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. To the extent that Mother suggests her testimony should be given greater weight than the caseworker's testimony, we defer to the juvenile court's credibility determinations. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286-87, ¶ 16 (App. 2016). Given the court's finding that DCS's case management services were reasonable, we find that the court rejected Mother's allegations. The evidence, *supra* ¶¶ 6, 8-9, supports this finding.

**¶17** Furthermore, the record shows Mother was aware of her obligations under the case plan in place, and those obligations did not change even after her plan was eventually updated. And Mother does not dispute the juvenile court's finding that DCS otherwise provided a panoply of reasonable reunification services. *See supra* ¶ 8. We disagree with her suggestion that the myriad of services offered was not enough to outweigh the alleged temporary disruption with her assigned caseworker.

**¶18** Mother's trial was held twenty months after the first dependency petition was filed. Even assuming Mother found it challenging to communicate with her caseworker for a few months, she fails to explain why that issue outweighs the otherwise undisputedly diligent efforts of DCS. Considering the vast array of services offered by DCS throughout the twenty months and the totality of circumstances in this case, we cannot say the juvenile court abused its discretion when it found that DCS made a diligent effort to reunify Mother with the Children. Thus, Mother's argument is meritless, and we affirm the juvenile court's determination that DCS proved that termination was justified under A.R.S. § 8-533(B)(3).

**¶19** Because we affirm the court's determination that termination was justified due to Mother's chronic substance abuse, we do not need to address Mother's argument as to the other statutory grounds. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 14 (App. 2010) ("While the court terminated Father's parental rights on a number of statutory grounds pursuant to A.R.S. § 8-533(B), we will affirm the termination if any one of

---

caseworker from August to November 2019. The testifying caseworker also stated that, from November 2019 onward, Mother failed to keep in regular contact with DCS.

the statutory grounds is proven and if the termination is in the best interest of the children.").

¶20　　　　Mother also argues the court erred when it found that termination was in the Children's best interests. Terminating a parent-child relationship is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). Relevant factors in this determination include whether: (1) the current placement is meeting the child's needs, (2) an adoption plan is in place, and (3) the child is adoptable. *See id.* at 3-4, ¶ 12. Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). "The existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

¶21　　　　Moreover, "[i]n a best interests inquiry, . . . we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K.*, 210 Ariz. at 286, ¶ 35; *see also Maricopa Cnty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988) ("In most cases, the presence of a statutory ground will have a negative effect on the children."). Once a juvenile court finds that a parent is unfit, the focus shifts to the child's interests. *Kent K.*, 210 Ariz. at 285, ¶ 31. Thus, in considering best interests, the court must balance the unfit parent's "diluted" interest "against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. Of foremost concern in that regard is "protect[ing] a child's interest in stability and security." *Id.* at ¶ 34 (citing *Pima Cnty. Juv. Action No. S-114487*, 179 Ariz. 86, 101 (1994)).

¶22　　　　Mother argues the court erred because she was participating in various programs to address her substance abuse. At trial, Mother testified she was six months sober and had secured housing and employment upon her release from prison. Mother made clear at trial that she wanted to take custody of the Children and get involved in their lives. But we are obligated to affirm the juvenile court if there is any reasonable evidence to support its findings. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. Mother does not argue the court erred when it found the Children were doing well in their adoptive placement and needed permanency. Though Mother's recent apparent sobriety and her efforts to secure a safe home environment upon her release from prison are laudable, those facts do not negate the

reasonable evidence relied on by the juvenile court. Thus, we cannot say the juvenile court abused its discretion when it found that termination was in the Children's best interests.

**CONCLUSION**

**¶23** For the reasons above, we affirm the juvenile court in all respects.



AMY M. WOOD • Clerk of the Court
FILED: AA