NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.S.

No. 1 CA-JV 22-0235
FILED 3-23-2023

---

Appeal from the Superior Court in Maricopa County
No. JS21163
The Honorable Wendy S. Morton, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Thomas Vierling Attorney at Law, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Tanya S., Phoenix
*Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Angela K. Paton and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

¶1      Candelario H. ("Father") appeals the juvenile court's order terminating his parental rights to D.S. ("Child"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2      Father is the biological parent of Child, born in 2015. Tanya S. ("Mother") and Father never married, and Child has lived with Mother since birth. Child has low-grade cerebral palsy, is hearing and vision impaired, and has aphasia and feeding issues; Child requires ongoing therapies for his medical needs.

¶3      Father has been repeatedly incarcerated for most of Child's life. When Child was about two or three years old, Father provided a small pack of diapers and a toy for Child. From that time until 2019, Father did not try to contact Child or provide financial support.

¶4      In November 2019, Father was released from prison with probation. His probation terms included an order that prohibited contact with Mother unless authorized by the Adult Probation Department. Despite the no contact order, Father visited Mother and Child once in December 2019. Father testified that around this time, he also had a Facebook video visit with Mother, Child, and Child's brother.

¶5      Authorities arrested Father again in February 2020, and he remained in jail until April 2020. During this time, Father did not try to contact Child or arrange a visit. After his release in late April, Father remained out of custody for five months. During those five months, he made no attempt to contact Child. He was arrested again in September 2020 and has been incarcerated since. According to Father, he may be eligible for early release in 2025, but his official release date is in 2026.

¶6      In December 2021, Mother petitioned to terminate Father's parental rights on the grounds of abandonment, neglect and abuse,

incapacity, and criminal conviction, arguing that termination is in Child's best interests. Mother also requested that the statutory social study requirement be waived because her son is well-adjusted, the study could "confuse [her] son," and she could not afford hiring someone to conduct the study.

**¶7**        Father virtually appeared before the juvenile court in March 2022 to contest Mother's petition. He objected to Mother's request to waive the social study, and the court ordered that the social study be completed before the September 2022 hearing. Pursuant to this order, Mother hired a private social worker to prepare the report. In April 2022, Father wrote to Child: "I'm sorry I lost contact with you my son. It shouldn't happen."

**¶8**        After the September 2022 contested hearing, the juvenile court found by clear and convincing evidence that Father had abandoned Child; the court determined Mother did not meet her burden to establish the other alleged grounds. The court found that Father failed to vigorously assert his parental rights to see Child, especially noting Father's concession that he never sought permission to have contact with Child when he was released.

**¶9**        In its ruling, the court rejected the social worker's study, finding it failed to provide an objective discussion of the facts. The court then considered whether the current placement with Mother was meeting Child's needs and whether any bond existed between Child and Father.

**¶10**        The court found by a preponderance of the evidence that termination was in Child's best interests because Child "has not bonded with Father," "does not know Father," and "[f]or nearly all of [Child's] life, Father has failed to be a consistent, reliable parent." The court also found that Child is "flourishing" in Mother's care, and Father has "no present ability to care for the child because he is still incarcerated and will remain so until 2025, at minimum." The court granted Mother's petition, citing to Child's need for stability, especially given his health needs.

**¶11**        Father challenges the juvenile court's decision to reject the social study and its best interests findings. He does not challenge the court's finding of abandonment. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), 12-2101(A)(1); Ariz. R.P. Juv. Ct. 601, 603.

## DISCUSSION

**¶12**        We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). On appeal, due process requires us to assess whether a reasonable

factfinder could conclude, based on the record, that the moving party has met its clear and convincing evidentiary burden to sustain the termination of parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 747–48, 769 (1982); *Maricopa Cnty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988) (party seeking termination bears the burden of persuasion). We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52, ¶ 19 (App. 2007) (cleaned up).

## I.    Social Study

**¶13**        Father argues the juvenile court erred in rejecting the social study and ruling in its absence. He also argues the court erred when it ruled without a waiver of the study.

**¶14**        In a termination proceeding, the court must order that a "complete social study" be submitted before the hearing. A.R.S. § 8-536(A). The study must address the "circumstances of the petition, the social history, the present condition of the child and parent, proposed plans for the child, and such other facts as may be pertinent to the parent-child relationship." *Id.* The study must also include a specific recommendation and the reasons the parent-child relationship should or should not be terminated. *Id.*

**¶15**        Though the study should be relevant to the court's decision, the court need not adopt its findings or recommendation. *See DePasquale v. Superior Court*, 181 Ariz. 333, 336 (App. 1995) (the court must not "abdicate its responsibility to exercise independent judgment"). And the court has the discretion to waive the study if doing so would be in the child's best interests. A.R.S. § 8-536(C).

**¶16**        Upon review, the court found that the social worker's study "appears to derive from only one source of information," "contains opinions and inflammatory statements that demonstrate bias and prejudice," and "fails to cite any additional sources considered." Father argues that without a social study, nothing else can corroborate the court's finding that Mother is meeting Child's needs. But as the court stated in its ruling, the study was written in bullet points and provides "no discussion or analysis of the information presented as it applies to the best interests of the child." For these reasons, the court concluded that the study was of no evidentiary value and relied only on the testimony presented at trial. Mother, Father, and Child's aunt—also Child's foster mother—each offered testimony. "The juvenile court is in the best position to weigh the evidence,

observe the parties, judge the credibility of witnesses, and make appropriate findings." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011). The court did not abuse its discretion in rejecting the study.

## II.    Best Interests

**¶17**    Father does not challenge the juvenile court's finding of statutory abandonment. He argues generally that he has a fundamental right to parent. But "a parent's right to custody and control of [his] own child, while fundamental, is not absolute." *Sheena W. v. Dep't of Child Safety*, ___ Ariz. ___, ___, ¶ 11, 522 P.3d 686, 689 (App. 2022). He also argues that the court's best interests determination contradicts the record evidence. When there is clear and convincing evidence of parental unfitness under Section 8-533(B), the juvenile court may terminate a parent's rights upon finding, by a preponderance of the evidence, that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, 288, ¶¶ 7, 41 (2005); A.R.S. § 8-533(B).

**¶18**    Father is correct, to find that termination is in Child's best interests, the court must find either an affirmative benefit to termination or that the Child would be harmed by a continuation of the parent-child relationship. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018). But we are not persuaded by his argument that the court erred in finding a detriment to maintaining the parent-child relationship.

**¶19**    The court presumes that the interests of the parent and child diverge upon proof of one of the statutory grounds for termination. *Alma S.*, 245 Ariz. at 150, ¶ 12. And "in considering best interests, the court must balance the unfit parent's 'diluted' interest 'against the independent and often adverse interests of the child in a safe and stable home life.'" *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016). The primary concern in this regard is the child's interest in stability and security. *Id.*

**¶20**    The record evidence reveals that Father failed to provide food, clothing, and basic necessities for Child, even while not incarcerated, and he has taken no part in Child's medical care or therapies. The court concluded that Child "deserves to have the stability afforded by Mother," and "[i]t would be a detriment to the child to disrupt that stability by reintroducing a parent who has never made a consistent effort to be a part of his life." Mother has established a safe and secure home and is meeting Child's special and educational needs. Reasonable evidence supports the court's findings.

**CONCLUSION**

¶21  We affirm the juvenile court's order terminating Father's parental rights to Child.



AMY M. WOOD • Clerk of the Court
FILED:  AA