748 P.2d 785

**In the Matter of the APPEAL IN MAR-
ICOPA COUNTY JUVENILE
ACTION NO. JS–6831.**

**No. 1 CA–JUV 382.**

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 7, 1988.

Robert K. Corbin, Atty. Gen., by Macre Monson, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Economic Sec.

Marc R. Grant, Phoenix, for the Children.

Robert D. Rosanelli, Phoenix, for appellant, John Hutchins.

## OPINION

JACOBSON, Judge.

This is an appeal from an order of the Superior Court of Maricopa County, Juvenile Division, entered on January 19, 1987, denying petitioner's motion to terminate the parental rights of Rebecca Van Antwerp. The subjects of this case are Misty Hutchins, now 12 years of age, and her half sister, Tabitha Hutchins, now 9 years of age. Both children are the natural children of Rebecca Van Antwerp. Petitioner, John Hutchins is the natural father of Misty only. Tabitha herself does not know that Mr. Hutchins is not her natural father.

Mr. Hutchins and Ms. Van Antwerp were divorced in 1981. Ms. Van Antwerp was given custody of both children. However, in 1983, Ms. Van Antwerp was unemployed and on Public Assistance. At this time she brought the children to Phoenix, where Mr. Hutchins had relocated and entered into an oral agreement with him, that he would take custody of the children for a period of six months to one year, while Ms. Van Antwerp stabilized her situation. Later in 1983, both Ms. Van Antwerp and Mr. Hutchins remarried. Both children have been living with Mr. Hutchins and his new wife Tammy since 1983.

During the period from 1983 until 1986, there were conflicting versions of what took place. Ms. Van Antwerp maintains that Mr. Hutchins was responsible for decreasing communication between herself and her daughters, and that he eventually refused to return the children to her as they had previously agreed. Mr. Hutchins alleges that Ms. Van Antwerp ceased all but token attempts to contact her children and effectively abandoned them.

In January 1986, John Hutchins filed a petition to terminate the parental rights of Ms. Van Antwerp with respect to Misty and Tabitha on grounds of abandonment, pursuant to A.R.S. § 8–533(B)(1). In February 1986, he filed a dependency petition with respect to Tabitha, alleging that she was a minor child in need of effective parental care and control, and had no parent capable of exercising such care and control. These proceedings were consolidated but hearings were continued until October 1986.

In the meantime, Ms. Van Antwerp filed a petition for modification of custody and child support pertaining to Misty, in Maricopa County Superior Court, which had continuing jurisdiction over matters pertaining to the divorce of Ms. Van Antwerp and Mr. Hutchins. On September 16, 1986, Judge *Pro Tempore* Terry Kiser found, that:

1. The father, John Hutchins, had refused to return the child to the mother;

2. The mother, Rebecca Van Antwerp, had made no attempts to legally have the child returned, although she had not abandoned the child, and had been in continual contact with her while the child was in the father's possession; and

3. That joint custody be awarded, with the father to be the primary residential parent and the mother to have visitation rights as set forth therein.

Ms. Van Antwerp was also ordered to pay the sum of $50 per month to Mr. Hutchins for support of Misty.

On January 19, 1987, after three days of hearings, Judge Rapp entered his findings and orders in the consolidated juvenile matters. Judge Rapp found that Tabitha was dependent. Tabitha was made a ward of the court and custody was granted to John and Tammy Hutchins. As to the termination proceeding, Judge Rapp found that the statutory ground of abandonment had been met, but that the best interests of the children required denial of the termination petition.

■ It is from this second finding that petitioner, John Hutchins, appeals. Essentially, he contends that once a proper statutory ground for termination has been found under A.R.S. § 8–533(B), A.R.S. § 8–538 mandates the termination of parental rights. He further argues that although A.R.S. § 8–533(B) allows the juvenile court to consider the needs of the child in determining the existence or absence of a statutory ground for termination, the juvenile court may not deny termination based solely on the best interests of the children. Finally, petitioner argues that the evidence does not support a finding that denial of termination is not in the best interests of the children.

A.R.S. § 8–538(B) states:

If the court finds grounds for the termination of the parent-child relationship it shall terminate such relationship and take one of the following courses of action:

1. Appoint an individual as a guardian of the child's person;

2. Appoint an individual as guardian of the child's person and vest legal custody in another individual or an authorized agency.

Petitioner argues that the use of the word "shall" removes all discretion from the juvenile court once a "ground" is found. We agree. However, the "grounds" referred to are set out in A.R.S. § 8–533(B), which provides:

(B) Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any one of the following grounds, *the court may also consider the needs of the child.*

1. That the parent has abandoned the child.

(Emphasis added).

Petitioner here urges a literal reading of the statute, such that "the needs of the child" is considered in determining the existence or absence of the statutory ground. He argues that once the statutory grounds are found, the interests of the child are no longer a factor, and cannot be used to deny termination. We disagree.

■ It is true that termination cannot be predicated solely on the best interests of the child. *See Juvenile Appeal No. JS–4374,* 137 Ariz. 19, 23, 667 P.2d 1345, 1348 (App.1983); *Juvenile Appeal No. JS–4130,* 132 Ariz. 486, 491, 647 P.2d 184, 189 (App. 1982); *Juvenile Appeal No. S–624,* 126 Ariz. 488, 490, 616 P.2d 948, 950 (App. 1980). The reason that the "best interests of the child" alone do not provide a sufficient basis for termination, is that the right of parents to the care and custody of their child is a fundamental right. *Juvenile Appeal No. JS–4942,* 142 Ariz. 240, 242, 689 P.2d 183, 185 (App.1984); *Juvenile Appeal No. J–3824,* 130 Ariz. 530, 534, 637 P.2d 740, 744 (1981). Many parents are not the "best" parents for children or do not provide them with a perfect home, yet this is insufficient to terminate this basic and important relationship. "The fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). The law therefore requires that the party seeking termination prove a specific statutory ground under A.R.S. § 8–533(B). Such a requirement, however, states only that a statutory ground is a *minimum* to ordering severance. Petitioner argues that our analysis ends there. We cannot agree.

It is well established under Arizona law that not only must a petitioner urging termination prove by clear and convincing evidence that a statutory ground exists, they must also show that this ground somehow deprives the parent of the ability to effectively care for the child. *See Juvenile Appeal No. JS–5209 and No. SS–4963,* 143 Ariz. 178, 692 P.2d 1027 (App.1984) (finding of mental illness alone is not justification for termination of parental rights; rather it must be established the mental illness prevents parent from discharging parental responsibilities); *Matter of Juvenile Appeal No. J–2255,* 126 Ariz. 144, 613 P.2d 304 (App.1980) (parents' felony conviction still requires juvenile court to assess parents' future fitness on basis of past act).

In most cases, the presence of a statutory ground will have a negative effect on the children. However, in some cases, this will not be true. In the present case, for instance, although there was evidence that Ms. Van Antwerp left her children in Arizona with Mr. Hutchins, and thereafter had only limited and sporadic contact with them, there was also evidence that there were extenuating circumstances which prevented Ms. Van Antwerp from retrieving her children. In cases such as these, it becomes necessary for the juvenile court to weigh the overall best interests of the child against the objective behavior of the parent which constitutes the statutory ground. This is what the legislature intended in holding that "in considering any of the following [statutory grounds], the court may also consider the needs of the child." A.R.S. § 8-533(B). We therefore hold that where a juvenile court determines that despite the presence of statutory ground it is not in the best interests of the child to terminate, he may deny termination. Although the best interests of the child alone are not sufficient to grant termination, they may be sufficient to deny termination.

Finally, we address what appears to be a misunderstanding of the proper burden of persuasion in severance matters. In his brief, petitioner states as his reason for seeking termination that "there is no recognizable benefit to the minor children of maintaining their relationship with their natural mother." This misstates the burden of persuasion with respect to severance of parental rights. In a termination proceeding, the party *seeking* severance must affirmatively demonstrate a reason to terminate. "Until the state proves unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." *Santosky, supra* 455 U.S. at 760, 102 S.Ct. at 1398.

In the present case, the juvenile court judge found that despite the finding of abandonment it was not in the best interests of the children to terminate the parental rights of Ms. Van Antwerp. This holding is supported by the evidence. Both Dr. Thal and Dr. Lavit testified that the contact and visitation between Rebecca Van Antwerp and the children was beneficial to the children, that they recognized Ms. Van Antwerp as their natural mother, and that the potential for a deeper relationship between Ms. Van Antwerp and her daughters existed. There was no evidence that denial of termination would be detrimental to the children; the record contains no reference to potential adoption of the children by the Hutchins, and Dr. Thal testified that he did not believe the "stress" of living apart from, yet maintaining contact with, their natural mother was extraordinary or traumatic for the children. The "stress" hypothesized by Dr. Lavit and cited by petitioner in his supplemental brief was not attributed to continuing contact with Ms. Van Antwerp but rather to the prospective relocation of Tabitha to Illinois to live with her mother. On this issue, there was overwhelming evidence presented that it would be detrimental to the girls to separate them by having Tabitha live with Ms. Van Antwerp while, pursuant to the custody order in the accompanying domestic relations case, Misty was to live with the Hutchins most of the year. The evidence indicated that the girls had built a strong social and familial network in Arizona, and that they were doing well in school there. However, from the finding that the girls should live together and in Arizona with the Hutchins, it does not necessarily follow that the rights of Rebecca Van Antwerp should be terminated. Severance of these rights is a permanent deprivation, not only on the right to custody but to all contact. *See Juvenile Appeal No. J-2255*, 126 Ariz. 144, 147, 613 P.2d 304, 307 (App.1980) (if A.R.S. § 8-533 is satisfied and a termination order is entered, appellant loses all rights to visit the child). Under this state of the record we cannot say the trial judge erred in denying termination. Therefore, the denial of termination is affirmed.

CORCORAN, J., and BROOKS, J., concur.