NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

JULIAN D., *Appellant*,

*v.*

MCKENZI W., M.D., *Appellees*.

No. 1 CA-JV 19-0365
FILED 3-17-2020

Appeal from the Superior Court in Yavapai County
No. V1300SV201880013
The Honorable Debra R. Phelan, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

The Shaw Law Group, PLLC, Prescott
By Bryan C. Shaw
*Counsel for Appellee McKenzi W.*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

**¶1** Julian D. (father) appeals the superior court's order terminating his parental rights to M, his biological child. Because reasonable evidence supports the superior court's order, the termination of parental rights is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

**¶2** In August 2018, McKenzi W. (mother) moved to terminate father's parental rights under A.R.S. § 8-533 on several grounds including: (1) abandonment, and (2) neglect or willful abuse by exposing M to a significant amount of domestic violence against mother.

**¶3** Father has a long history of domestic violence against Mother. The history is well documented by law enforcement, witness accounts, medical reports, and Arizona courts. Father also has a history of violating protective orders mother secured against him.

**¶4** During their relationship, father committed no less than eight acts of domestic violence against mother in which he was cited, charged, or arrested. Many of these acts occurred either while mother was pregnant or within the first 14 months of M's life.

**¶5** In May 2017, while mother was nine-months pregnant with M, father threatened to kill mother, threw her to the ground, and punched her in the face, giving her a black eye. M was born a month later. Mother and father continued their relationship for another five months.

**¶6** Father's acts of domestic violence continued. In December 2017, father struck mother across the face, bruising her, and rupturing her eardrum. Mother ended the relationship with father at that point. In May 2018, father and his then-girlfriend ambushed and beat up mother. The attack occurred in full view of M.

¶7        Father's acts of domestic violence continued to escalate. In August 2018, while holding M, father hit mother several times, pushed her into a wall, and choked her. A friend intervened and wrestled M from father. Mother took M and started running away. Before mother could get into a car to leave, father tackled her, threw her to the ground, and caused her to land on M. Mother broke free, got to her car, and locked M inside. Father hit mother five more times, causing her eye to swell shut. Mother managed to get into the car and lock father out. Unable to reach mother, father continued his attack on the car and broke the windshield. During this incident, M was a little over one year old.

¶8        Father was charged with several crimes for the August 2018 confrontation, including assault and criminal damage. He was incarcerated for six months. Mother secured an order of protection because of the assault. This confrontation was the last time father had any contact with M.

¶9        After his release, father said he engaged in many services geared toward parenting, anger management, and sobriety. He said he completed a parenting 101 class and partially completed a domestic violence program. Father said his incarceration changed him. He said he gained insight into himself, child development, and the impact of domestic violence.

¶10        After hearing father's testimony, the superior court did not find him credible. As to father's domestic violence history, the superior court found he has not accepted responsibility and instead blamed the victim for triggering the abuse.

¶11        The superior court also recognized father did not provide for M. From M's birth until father was incarcerated, father had only a nominal relationship with M. Since father's incarceration, he has provided no support for and has had no contact with M.

¶12        The superior court held a contested severance trial on August 15, 2019, and issued its ruling on October 7, 2019.

¶13        The superior court found mother did not prove the grounds of mental illness, mental deficiency, or a history of chronic abuse of dangerous drugs, controlled substances, or alcohol. However, the superior court found by clear and convincing evidence mother proved the statutory grounds of (1) abandonment, and (2) neglect and abuse. The superior court also found mother proved by a preponderance of the evidence terminating father's parental rights was in M's best interests.

¶14 Father timely appealed. Father does not challenge the superior court's findings regarding any grounds for termination. Father only appeals the superior court's best-interests findings. This court has jurisdiction under A.R.S. §§ 8-235 and 12-120.21(A)(1).

**ANALYSIS**

¶15 The superior court may sever a parent's rights if clear and convincing evidence establishes at least one statutory ground. *See* A.R.S. § 8-533(B); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Here, the superior court found mother proved two grounds for termination by clear and convincing evidence.

¶16 The superior court then must determine if the parties seeking termination proved by a preponderance of the evidence the termination is in the child's best interest. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Here, mother had to show either "the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship." *See Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011) (quoting *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998)); *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004) (referencing the child deriving an affirmative benefit from termination or incurring a detriment by continuing the relationship).

¶17 When reasonable evidence supports severance, a child's "interest in stability and security" is the superior court's main concern. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016). Once the superior court finds the existence of a statutory ground for termination, the superior court may "presume that the interests of the parent and child diverge." *Alma S. v. Ariz. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018). In "most cases, the presence of a statutory ground will have a negative effect on the children." *Maricopa County Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988).

¶18 In analyzing best interests, the superior court "focuses primarily upon the interests of the child, as distinct from those of the parent." *Kent K.*, 210 Ariz. at 287, ¶ 37 (2005). This assessment must balance the child's rights against those of the unfit parent. "At this stage, the child's interest in obtaining a loving, stable home, or at the very least avoiding a potentially harmful relationship with a parent, deserves at least as much weight as that accorded [to] the interest of the unfit parent in maintaining parental rights." *Id.*

**¶19**        Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted).

**¶20**        Here, reasonable evidence supports the superior court's best-interests findings. Father had a limited relationship with M from the time M was born to the time father was incarcerated. Father has not had a relationship with M since his incarceration. He has not provided financially for M and took no affirmative steps to protect his parental rights.

**¶21**        In addition, father engaged in numerous significant acts of domestic violence against mother, many in M's presence. Father's history demonstrates a conscious disregard for M's mental health, safety, and security.

**¶22**        The superior court found father was not credible when he said he changed. The superior court further expressed concern because father did not accept responsibility for his actions and engaged in victim blaming. The superior court emphasized its concern "given the extensive domestic violence education/counseling services in which [father] has been engaged."

**¶23**        Terminating father's parental relationship with M would benefit M because father will not have the opportunity to continue exposing M to the ill effects, both direct and indirect, of domestic violence. It also allows M to move forward without concern father will seek to intervene in M's life after having no relationship with M for so long.

**¶24**        In short, reasonable evidence establishes (1) severing father's parental relationship would be beneficial to M and (2) preserving the parental relationship would be detrimental to M.

**CONCLUSION**

**¶25** Because reasonable evidence supports the superior court's order, this court affirms the termination of father's parental rights to M.



AMY M. WOOD • Clerk of the Court
FILED: AA