IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO E.C.

No. 1 CA-JV 24-0203

FILED 10-03-2025

Appeal from the Superior Court in Maricopa County
No. JS21422
The Honorable Adele Ponce, Judge

**REVERSED AND REMANDED**

COUNSEL

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Mother Alisha F.*

Czop Law Firm, PLLC, Queen Creek
By Steven Czop
*Counsel for Father Joseph C.*

Law Office of H. Clark Jones, LLC , Mesa
By H. Clark Jones
*Counsel for E.C.*

Maricopa County Legal Advocate's Office, Phoenix
By Amanda Adams
*Counsel for Amici Curiae Indigent Defense Agencies*

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Amici Curiae Indigent Defense Agencies*

Maricopa County Legal Advocate's Office, Phoenix
By Seth Draper
*Counsel for Amici Curiae Indigent Defense Agencies*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Amicus Curiae Department of Child Safety*

---

**OPINION**

Judge David B. Gass delivered the opinion of the court, in which Presiding Judge Brian Y. Furuya and Chief Judge Randall M. Howe joined.

---

**G A S S**, Judge:

**¶1** Mother petitioned to terminate father's parental rights to their child based on abandonment. She sought termination so the child's step-father, her current husband, could adopt the child. The superior court denied mother's petition to terminate based on best interests alone, without addressing whether mother had proven abandonment.

**¶2** Mother argues the superior court erred when it found termination was not in the child's best interests because it considered whether step-father's criminal history precluded him from adopting the child. The court, of its own accord, directed the parties and invited *amici curiae* to file supplemental briefs addressing whether the superior court must engage in a sequential two-step analysis (first addressing statutory grounds and second, best interests) or whether it may deny termination on best interests alone without considering the statutory grounds. Though father did not file an answering brief, he and others filed supplemental briefs.

**¶3** Because the superior court always must engage in the sequential two-step analysis, the court reverses and remands to the superior court for proceedings consistent with this opinion.

2

**FACTUAL AND PROCEDURAL HISTORY**

**¶4**　　　　Mother and father met in Washington. They married in 2013. Father was in the military at the time. In 2015, mother gave birth to the child. Mother alleged father threatened her at gunpoint and physically abused her throughout their relationship. She also alleged father bruised the child's arm. As a result, mother left father that same year and took the child with her.

**¶5**　　　　In 2016, mother obtained a default divorce decree in Oregon, which granted her sole custody of the child and gave father the opportunity for supervised parenting time seven times a year. The decree ordered father to pay $583 per month in child support. Father has done so, though he started off in arrears. The decree made father's parenting time contingent on proof he completed a parenting class and required mother and father to provide each other and the court reasonable notice before relocating more than 60 miles.

**¶6**　　　　A month after the divorce, mother obtained a restraining order against father in Oregon. Both mother and father agreed the restraining order prohibited contact just between one another, not between father and the child. The Oregon court renewed the restraining order annually over seven years, finally dismissing it in late 2024. Despite the restraining order, father arranged for mother's father and step-mother to allow him to spend time with the child until mother cut ties with them. Mother argued father could have maintain contact through her sister if he wanted parenting time with the child, but he did not. Father said he was unaware mother's sister was available to supervise.

**¶7**　　　　In 2017, father sent multiple emails to mother's attorney, requesting parenting time with the child under the decree. In those emails, father provided a certificate showing he completed the parenting class. Father received no response from mother's attorney, until he eventually responded, saying he "didn't represent her anymore."

**¶8**　　　　In 2019, father petitioned for parenting time in the Oregon case. The Oregon court required him to complete a domestic violence assessment. Father sought to schedule the assessment in late 2020, but did not complete it until August 2021. The assessment recommended parenting time and said father did not have "any behaviors that would suggest he would not be [a] safe and caring father."

**¶9**　　　　Mother changed addresses several times, after which she notified the court, but did not tell father. Around 2020, mother settled in

Arizona. Mother and the child have resided here since then. Mother met step-father in 2021 and introduced the child to him in February 2022. Mother says the child views step-father as a father. She testified at the termination hearing that the child never "had a father figure until [step-father] came in." Mother married step-father in July 2023. The child lives with mother, step-father, and a younger half-sibling, does well, and excels in school.

¶10　　　　In October 2023, mother petitioned to terminate father's parental rights, alleging father abandoned the child. *See* A.R.S. § 8-533.B.1. Mother asked the superior court to terminate father's parental rights so the child "can then be adopted by the person [the child] views as [a] father."

¶11　　　　Still living in Oregon, father was unaware mother was in Arizona until she served him with the termination petition. In December 2023, father moved to enforce parenting time in the Oregon case. That filing prompted the child's counsel to ask the superior court to hold a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) conference with the Oregon court. In February 2024, the Oregon court ruled it had exclusive, continuing jurisdiction over this matter, but relinquished jurisdiction to Arizona because it was the "more convenient forum." By then, the child had resided in Arizona for almost four years. The Oregon court then dismissed father's motion to enforce parenting time.

¶12　　　　The superior court ordered a social study. Step-father participated, but father did not. The social study identified no substantiated Department of Child Safety reports concerning step-father. But the report noted step-father's extensive criminal history, including armed robbery with a deadly weapon, aggravated assault, and burglary. Mother met step-father while she was working at the prison where he was serving his most-recent sentence. Even so, the social study recommended terminating father's parental rights so mother could proceed with her plan to have step-father adopt the child.

¶13　　　　Following an October 2024 contested termination adjudication, the superior court declined to rule on whether mother proved by clear and convincing evidence father abandoned the child. Instead, the superior court denied mother's termination petition, concluding mother did not prove by a preponderance of the evidence it was in the child's best interests. The superior court noted, "Introducing [f]ather to the child at this point when the child does not know [f]ather could also be disruptive to the child and put [the child] in contact with a parent who has been absent from [the child's] life." Even so, the superior court found termination was not in

4

the child's best interests because (1) "[t]here [was] the potential for the child to have a relationship with [f]ather that would be a benefit to [the child]," and (2) "[i]t was unlikely in any case, that stepfather would pass the necessary clearances to be able to adopt the child."

**¶14**　　　The court has jurisdiction over mother's timely appeal under Article VI, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235.A and 12-2101.A.1, and Rule 603(a), Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

**¶15**　　　The court accepts the superior court's findings "if reasonable evidence and inferences support them." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 18 (2018) (citation omitted); *see also Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 30 (2023). The court defers to the superior court's factual findings because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted). The court will not reweigh the evidence. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366 ¶ 8 (App. 2022).

**¶16**　　　The court reviews questions of law *de novo*, including interpretations of statutes. *Brionna J.*, 255 Ariz. at 476 ¶ 17. The court applies these standards of review to ensure it affords "appropriate deference . . . to the [superior] court's factual findings while maintaining the [] court's role in properly reviewing the [superior] court's legal conclusions." *Id.* at 479 ¶ 31.

## I. The superior court must conduct a two-step analysis when considering a petition to terminate a parent's rights.

**¶17**　　　Father argues mother waived the issue of whether deciding the matter based on best interests alone was error because she did not raise it before the superior court or in her opening brief. True, the court could treat that failure as waiver. *See Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 371 ¶ 6 (App. 2009). "But the decision to [apply] waiver is discretionary." *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 536 ¶ 9 (App. 2018). When the best interests of the child are at stake, the court generally will not apply waiver. *Nold v. Nold*, 232 Ariz. 270, 273 ¶ 10 (App. 2013). Because the child's best interests are at issue, the court declines to apply waiver. *See id.*

**¶18**        Under A.R.S. § 8-533.B, the superior court must conduct a two-step analysis when determining whether to terminate a parent's rights: (1) does a statutory ground for termination exist and (2) is termination in the child's best interests. *See Alma S.*, 245 Ariz. at 149 ¶ 8 (reaffirming *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016)); *see also Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 227 ¶ 12 (2020). The two-step distinction between (1) the statutory ground and (2) the child's best interests comes from section 8-533.B. Subsection B says: "in considering any of the following grounds, the court shall also consider the best interests of the child."

**¶19**        The issue then is whether the superior court erred by failing to address the statutory ground first before it decided best interests. Because the negative effect the ground has matters to the superior court's best-interests analysis, the test is a sequential one, requiring the superior court find a statutory ground before it addresses best interests, even when declining to terminate parental rights. *Alma S.*, 245 Ariz. at 150–51 ¶ 13 (citing *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99 ¶¶ 11–12 (App. 2016)). Only after fully understanding the ground can the superior court accurately assess and consider "the negative effect on a child of the continued presence of a statutory [] ground in a totality of the circumstances." *See id.*

**¶20**        First, before terminating a parent's rights, the superior court must find clear and convincing evidence supports at least one statutory ground for termination. *See Alma S.*, 245 Ariz. at 149 ¶ 8. "[T]ermination cannot be predicated solely on the best interests of the child." *Maricopa Cnty. Juv. Action No. JS-6831*, 155 Ariz. 556, 558 (App. 1988). The superior court thus must deny a petition if it does not find clear and convincing evidence of at least one statutory ground.

**¶21**        Second, the superior court must find by a preponderance of the evidence termination is in the child's best interests. *See Alma S.*, 245 Ariz. at 149 ¶ 8; *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 13 (2022) ("Second, *assuming a § 8-533(B) ground exists*, the [superior] court must decide whether a preponderance of evidence supports a finding that termination is in the child's best interests." (emphasis added)). In evaluating whether termination is in the child's best interests, the superior court must determine whether "the child will benefit from [termination] or the child will be harmed if termination is denied." *See Alma S.*, 245 Ariz. at 150 ¶ 13 (cleaned up). To that end, the superior court must consider the "totality of circumstances existing at the time of the termination

determination" because of the interest in the child's "stability and security." *See id.* at 150–51 ¶¶ 12–13 (cleaned up).

**¶22** Until a party proves a statutory ground, the parent and child "share a vital interest in preventing erroneous termination of their natural relationship." *Alma S.*, 245 Ariz. at 151 ¶ 15 (quoting *Santosky v. Kramer*, 455 U.S. 745, 760 (1982)). Not until the superior court finds "a parent is unfit, [may] the focus shift[] to the interests of the child as distinct from those of the parent." *See id.* at 150 ¶ 12 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 285 ¶ 31 (2005)). Then, when the superior court conducts the best-interests analysis, "the child's best interests predominate," not the parent's interests. *Timothy B.*, 252 Ariz. at 478 ¶ 31. "The superior court must not subordinate the interests of the child to those of the parent once a determination of unfitness has been made." *Id.* ¶ 32 (cleaned up). For that reason, the superior court cannot simply presume the interests diverge when it has not fully analyzed the ground. The extent of the divergence and the ground's ongoing negative effect on the child are based on the facts, not a presumption. The superior court's analysis is highly fact dependent. For that reason, on appeal the court defers to the superior court's factual findings. *Jordan C.*, 223 Ariz. at 93 ¶ 18. And the court will not reweigh the evidence. *Maria G.*, 253 Ariz. at 366 ¶ 8. Indeed, the result would be different if the ground was not a factor for the superior court to consider in its best-interests analysis. *See Alma S.*, 245 Ariz. at 150–51 ¶ 13.

**II.** **Because of the nature of the best-interests analysis, the superior court must resolve the statutory ground before it considers best interests, even if it ultimately denies the petition on best interests.**

**¶23** The superior court did not address whether mother proved the abandonment ground. Instead, the superior court denied the petition because termination was not in the child's best interests.

**¶24** Mother, the child, and *Amici Curiae* (the Department of Child Safety, Maricopa County Legal Advocate, Maricopa County Legal Defender, and Maricopa County Public Advocate) argue "the superior court was not permitted to deny the termination of parental rights based on a best-interests finding alone." The court agrees.

**¶25** Father stands alone in arguing the superior court need not address the two steps sequentially because a best-interests finding may support denying the petition. Father is partially correct. The child's best interests "may be sufficient to deny termination." *See, e.g.*, *JS-6831*, 155 Ariz. at 559 (affirming denial of petition on best interests after finding a statutory

ground for termination); *see also Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 8 (1990) (affirming parent abandoned the child, but vacating termination because termination would not be in the child's best interests).

**¶26** Father then argues the superior court properly may skip to the second step—best interests—without ruling on the first step. In doing so, father points to *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549–50 ¶ 10 (App. 2010). But *Matthew L.* stands for a different proposition: the superior court need not make written findings when denying a termination request because the party seeking termination did not prove the statutory ground. *Id.* The court would agree with father's application of *Matthew L.* if the superior court here had found mother did not prove father abandoned the child. But it did not. And *Matthew L.* does not say the superior court may skip to best interests without first finding a statutory ground.

**¶27** To complete the best-interests analysis under a totality of the circumstances, the superior court cannot skip the first step because it needs a full understanding of the nature and effect of the statutory ground alleged. Indeed, when evaluating best interests, "the negative effect on a child of the continued presence of a statutory [] ground in a totality of the circumstances" is a factor for the superior court to consider. *Alma S.*, 245 Ariz. at 150–51 ¶ 13 (citing *Dominique M.*, 240 Ariz. at 98–99 ¶¶ 11–12). As *Dominique M.* said, "Absent [termination], the continued presence of the conceded statutory grounds for [termination] also may, in certain cases, negatively affect the children." 240 Ariz. at 98 ¶ 11. And Arizona has long recognized that in "most cases, the presence of a statutory ground will have a negative effect on the children." *JS-6831*, 155 Ariz. at 559.

**¶28** Sequential analysis is especially pertinent when the alleged ground is a proxy for parental unfitness. "Eight of the eleven statutory grounds in § 8-533(B) are proxies for parental unfitness." *Alma S.*, 245 Ariz. at 150 ¶ 10. Abandonment is one of those eight grounds. *See* A.R.S. § 8-533.B.

**¶29** *JS-6831* provides an example of the need for a sequential analysis when the ground is abandonment. *See* 155 Ariz. at 558–59. In *JS-6831*, the superior court found the State proved the ground of abandonment and then considered whether termination was in the child's best interest. *Id.* at 559. Despite the presence of the statutory ground, the superior court found termination was not in the child's best interests. *Id.* The court affirmed that finding on appeal. *Id.* In reaching that conclusion, the court considered the ground and its effect on the child's best interests. *Id.* Of

particular note, *JS-6831* said no evidence showed the child would suffer from contact with the parent, in that case the mother. *Id.* Instead, the harm would occur from having the child relocate to live with the mother. *Id.* Because termination "is a permanent deprivation, not only on the right to custody but to all contact," the court concluded the superior court did not abuse its discretion in denying the termination. *Id*

¶30 Here, the superior court could not fully assess the effect of denying the termination without fully considering the abandonment ground and the effect on the child. Only then could the superior court determine whether the disruption of allowing the child to have contact with father, who had been absent from the child's life, would be in the child's best interests. And if the superior court did not find abandonment, it would not have to consider best interests.

¶31 Rule 353(a) of the Arizona Rules of Procedure for the Juvenile Court also shows the superior court must engage in a two-step sequential analysis. Rule 353(a) says, "At a termination adjudication hearing, the [superior] court must determine whether the petitioner or moving party has met the burden of proving at least one ground for terminating parental rights, **and** whether termination is in the child's best interests." (Emphasis added). Under that rule, the superior court must determine whether the petitioner met their burden of proof for both steps. Ariz. R. P. Juv. Ct. 353(h)(2). If the petitioner did not, the superior court must deny the petition. Ariz. R. P. Juv. Ct. 353(h)(4)(A). The superior court here made no findings about whether mother met her burden under the abandonment ground.

¶32 From the above discussion, the question arises: must the superior court complete the second step (best interests) if it finds the petitioner did not prove the first step (statutory ground)? No. The statutory ground may affect the best-interests analysis, but the reverse is not true. The superior court may end its analysis without more if it finds the petitioner did not prove a statutory ground by clear and convincing evidence.

## CONCLUSION

¶33 The superior court must determine whether mother established the abandonment ground by clear and convincing evidence before denying mother's petition on best interests. The court thus reverses the denial of mother's petition to terminate father's parental rights. On remand, the superior court must conduct a sequential two-step analysis by first finding whether mother established father abandoned the child and

then if father did abandon the child, finding whether terminating father's parental rights is in the child's best interests.

