NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION
OF PARENTAL RIGHTS AS TO J.V.

No. 1 CA-JV 25-0126
FILED 02-13-2026

---

Appeal from the Maricopa County Superior Court
No. JS520982
The Honorable David J. Palmer, Judge

**VACATED AND REMANDED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Matthew L.*

Martinez Law Offices, Phoenix
By Elizabeth J. Martinez
*Counsel for Appellee Desiree J.*

Alexander Legal LLC, Chandler
By Amy Alexander
*Counsel for Appellee Child J.V.*

Rothstein Donatelli LLP, Tempe
By April E. Olson
*Counsel for Appellee Navajo Nation*

_____

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya joined. Judge James B. Morse Jr. concurred in part and dissented in part.

_____

**J A C O B S**, Judge:

¶1 Matthew L. ("Father") appeals the termination of his parental rights as to his son J.V. on the grounds of abandonment, abuse and neglect, felony conviction, and chronic substance abuse. We vacate the court's best interests ruling for lack of analysis and findings. Because the basis for terminating on the statutory ground of abuse is undisputed, we remand to the juvenile court for further proceedings, so it may analyze whether termination on that basis is in J.V.'s best interests.

## FACTS AND PROCEDURAL HISTORY

**A.** **J.V. is Born and Father is Arrested and Sentenced to Seventeen Years in Prison.**

¶2 J.V. was born December 13, 2019 to Father, then eighteen years old, and Desiree J. ("Mother"), then seventeen years old. J.V. is their only child, and they are all members of the Navajo Nation. In December 2019 and January 2020, they lived together with other members of Mother's family at Mother's father's home in Winslow.

¶3 On January 30, 2020, Father was arrested after violently attacking Mother and her younger sister in J.V.'s presence. Father pled guilty to attempted second degree murder of Mother, aggravated assault, and child abuse, all felonies, and to possession of marijuana. He was sentenced to seventeen years in prison. His expected release is January 2037, just after J.V.'s eighteenth birthday.

**B.** **Father Petitions for Parenting Time and Mother Petitions to Terminate Father's Parental Rights.**

¶4 In October 2024, Father filed a family court petition: for parenting time and joint legal decision-making; to require him to pay child support; asking that J.V. be allowed to receive gifts and that Father receive documentation of their receipt; and for grandparent visitation. Before filing, Father "had no contact with [J.V.] other than through" his mother,

T.H. ("Paternal Grandmother"). But Father filed because he "wanted to establish a relationship with [J.V.] and get to know him and bond with him as he grows up[,]" in part because Father "didn't have a father" figure growing up, so he "want[ed] to make sure that [J.V.] doesn't go down the same path that [he had] gone down, which [he is] currently in right now."

¶5          Mother then petitioned the juvenile court to terminate Father's parental rights to J.V. She pleaded four grounds for terminating Father's parental rights: (1) abandonment; (2) neglect or abuse; (3) chronic substance abuse; and (4) felony conviction. Father contested Mother's petition, so the juvenile court appointed counsel for Father and for J.V. Mother asked the family court to stay its proceedings until the juvenile court could resolve her termination petition. The Navajo Nation intervened as a party under the Indian Child Welfare Act ("ICWA").

### C.    The Juvenile Court Holds a Termination Hearing.

¶6          On June 18 and July 14, 2025, the juvenile court held a two-part hearing at which Mother testified. She detailed Father's January 2020 attack and noted the violent nature of his felony convictions and the length of his sentence. She also testified that, before his arrest, Father had a prior alcohol-related incident with police, abused marijuana and cough medicine, and once intentionally cut himself.

¶7          Mother explained Father's relationships with her and with J.V. She said Father had no relationship with J.V. during the first month of J.V.'s life, and no contact with J.V. after his arrest, in part due to a temporary protective order. She stated she made no efforts to facilitate any contact between Father and J.V. after Father's arrest, and blocked Paternal Grandmother from facilitating contact because she did not want Paternal Grandmother sharing pictures of J.V. with Father. Mother testified she had no contact with Father after his arrest, no knowledge of Father's current circumstances, no knowledge of his rehabilitative efforts, and no knowledge of any current use or abuse of any illicit substances. She offered no evidence of any sort of his use of illicit substances since January 2020.

¶8          Mother testified she sought termination after Father petitioned to protect his parental rights because she did not want him to have a relationship with J.V. She feared any relationship would negatively impact J.V.'s mental and physical wellbeing. She detailed J.V.'s current and prospective relationships to other members of Father's family. She did not oppose their visiting J.V. in her home but did not want electronic contact with them. And she said J.V. had no current contact with Paternal

Grandmother, who had not asked to visit J.V. for three years. Mother offered as evidence of Father's parental unfitness: the Winslow Police Department Report of Father's January 2020 arrest; the grand jury indictment of Father; Father's plea agreement; and Father's sentence.

**¶9** Father also testified at the hearing. He described his parenting efforts in the month of J.V.'s life before his January 2020 arrest. He admitted he had no contact with J.V. after his arrest but argued he made efforts to make contact. He described his mental health and rehabilitative efforts while incarcerated, including therapy sessions between 2021 and 2024. And he explained that he petitioned for custody because he wanted to have a relationship with J.V. himself and wanted his family members to have a relationship with J.V., but that he would abide by any family court orders restricting his ability to parent J.V. Father offered evidence of his rehabilitative efforts, including his: Arizona Public Schools Certificate of Promotion; certificate from a mandatory functional literacy program; and Conquer Series Episodes IV, V, & VI certificate. He also introduced his custody petition.

**¶10** An ICWA expert testified termination would be in J.V.'s best interests because she believed any relationship between J.V. and Father would result in emotional or physical harm to J.V. due to Father's crimes and because active efforts to prevent the dissolution of the family proved unsuccessful. Based on discussions with Mother, she testified Mother takes care of J.V., that J.V. has a significant bond with Mother's new partner, and that Mother has good reason to oppose any relationship between J.V. and Father. She testified Father never sent J.V. cards, gifts, or letters. And she testified that Father's incarceration limited his access to rehabilitative services so there were no drug or alcohol rehabilitation services she believed he could have, but failed to, participate in.

**¶11** Paternal Grandmother testified that, for a short time after Father's arrest, she facilitated contact between Father, Mother, and J.V. through Facebook, but Mother cut off that contact by blocking her. She also testified that before his incarceration, Father had gone to counseling for mental and behavioral issues and that he "was using" and "had an addiction going on" which included sniffing shoe glue chemicals, smoking marijuana, and taking pills. She said Father was unable to maintain his sobriety before January 2020 and was likely under the influence at the time of his arrest. She also testified to Father's efforts to become a better person while incarcerated and to her belief that J.V. should have a relationship with Father and his family.

### D.     The Juvenile Court Terminates Father's Parental Rights.

**¶12**     After the hearing, the juvenile court terminated Father's rights to J.V. on grounds of  abandonment, abuse and neglect, substance abuse, and felony length of incarceration.  However, the order's first page states in bold capital letters, **"MOTHER'S SEVERANCE PETITION DENIED**[.]**"**

**¶13**     *Abandonment.*  In discussing abandonment under A.R.S. § 8-533(B)(1), the court stated "Father's dangerous, violent actions have led to multiple felony convictions and eventual lengthy periods of incarceration. Without question, that incarceration will require others to undertake any of the myriad responsibilities associated with his parenting of the children. Instead, Father through his actions, has left those obligations to others." Based on this analysis, the court found this ground proven by clear and convincing evidence.

**¶14**     *Abuse.*  The court noted that Father pled guilty to Child Abuse, a class 2 felony, and found the statutory basis for abuse under A.R.S. § 8-533(B)(2) was proven by clear and convincing evidence.

**¶15**     *Neglect.*  The court found the statutory basis for neglect under A.R.S. § 8-533(B)(2) proven by clear and convincing evidence because Father "has neglected his children due to his lengthy incarceration."

**¶16**     *Prolonged Substance Abuse.*  The court found that Father chronically abused substances before January 2020.  The court found Father has impaired ability to parent J.V. because of "Father's lengthy imprisonment due to criminal behaviors closely associated with his abuse of substances."

**¶17**     The court found Father to be engaged in "ongoing . . . abuse of substances."  The court emphasized that factual finding, noting that a "parent's failure to abstain from substances despite a pending severance is 'evidence [the parent] has not overcome [the] dependence on drugs and alcohol.'"(quoting *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379 ¶ 29 (App. 2010)) (alterations in original).  Based on that factual finding, the court found "it is reasonable to believe that it [chronic drug abuse] will continue."  Based on these factual findings, the court found Mother had proved by clear and convincing evidence prolonged substance abuse under A.R.S. § 8-533(B)(3).

**¶18**     *Length of Incarceration For Felony Conviction.*  The court found Father was sentenced to 17 years for his criminal offenses.  The court

applied factors set forth in *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249-50 (2000), and concluded that Father's length of incarceration will deprive J.V. of a normal home with Father for a period of years. The court thus ruled that Mother had proved by clear and convincing evidence the length of incarceration ground for termination under A.R.S. § 8-533(B)(4).

**¶19** *Best Interests.* The court listed legal standards concerning best interests over six paragraphs of its ruling. The court then reached what would be the findings of fact necessary to support a conclusion that termination on the five statutory grounds would be in J.V.'s best interests. The remainder of the court's best-interests ruling read:

> In ruling on the issues raised the Court notes that Father Matthew Long is currently serving three concurrent prison terms of 17 years, and one prison term of 1 year. Testimony was provided regarding what the child [J.V.'s] age would be Father Long would be released from prison.
>
> The Court understands the severity of the offenses of which Mr. Long stands convicted. The Court also understands that barring a severe, unanticipated change of circumstance, that Father's release date from incarceration would Father Matthew Long.
>
> Testimony from the ICWA
>
> Based on the above, the Petitioner has proven by a preponderance of the evidence it would be in the minor child's best interest to terminate ***Father's*** parental rights.

**¶20** The court then granted Mother's petition and terminated Father's parental rights.

**¶21** Father timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶22** "Parents enjoy a fundamental liberty interest in 'the care, custody, and management' of their children." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 476 ¶ 18 (2023) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). As such, "the permanent severance of the parental relationship is a power of awesome magnitude that must be exercised with great rectitude and always cognizant of the fundamental rights at stake,"

*Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 153 ¶ 26 (2018) (Bolick, J., concurring), which means termination requires "'fundamentally fair procedures' that satisfy due process requirements." *Brionna J.*, 255 Ariz. at 476 ¶ 18 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 24 (2005)).

**¶23** Arizona statutes and rules ensure those fundamentally fair procedures. A.R.S. § 8-533(B) "provides a two-step inquiry for termination" of parental rights, whereby the juvenile court must first find "by clear and convincing evidence that at least one of the enumerated statutory grounds for termination exists," and then must "find by a preponderance of the evidence that termination . . . is in the child's best interests." *In re M.P.*, --- Ariz. ---, --- ¶ 11, 573 P.3d 564, 569 (App. 2025) (citation omitted). Importantly, the petitioner "bears the burden of proof as to both inquiries." *Id.*

**¶24** Further, A.R.S. § 8-538(A) and Arizona Rule of Juvenile Court Procedure 353(h)(2)(A) require courts to make written factual findings to terminate parental rights. Written factual findings "aid appellate review" and ensure due process by "'prompt[ing] judges to consider issues more carefully because they are required to state not only the end result of their inquiry, but the process by which they reached it.'" *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538 ¶ 18 (App. 2018) (alteration in original) (quoting *Miller v. Bd. of Supervisors of Pinal Cnty.*, 175 Ariz. 296, 299 (1993)).

**¶25** On appeal, we require "at least one sufficiently specific finding to support each of the court's conclusions of law." *Logan B.*, 244 Ariz. at 537 ¶ 15. The "court is not required to list each and every fact relied upon," but it "must include 'all of the ultimate facts[,']" which "are at least the essential and determinative facts on which the conclusion was reached." *Id.* (quoting *Elliott v. Elliott*, 165 Ariz. 128, 132 (App. 1990)). Appellate courts cannot "simply search the record to uncover ultimate facts the court may have relied upon, or infer findings the court may have made, in reaching the decision to enter an order of termination," or "determine in the first instance what ultimate facts the juvenile court would have reduced to writing to support its conclusions of law." *Id.* at 538–39 ¶¶ 17, 19.

**¶26** Father challenges the court's interpretations of and conclusions regarding the abandonment, neglect, substance abuse, and felony conviction grounds for termination. He challenges the court's best-interests conclusion and argues that factual misstatements and other errors in the written termination ruling show he did not receive due process and require reversing it. Mother argues the court made findings sufficient to

support its legal conclusions, that the errors in the ruling are harmless, and that Father received due process.

**Father Does Not Challenge the Juvenile Court's Finding of the Statutory Ground of Abuse, But We Vacate as Unsupported and Insufficient the Superior Court's Best-Interests Finding.**

¶27 We see serious and significant flaws in the juvenile court's analysis and approach to the abandonment, neglect, substance abuse, and felony conviction grounds for termination. Extended incarceration is not per se abandonment or neglect, there is no evidence of substance abuse postdating February 2020 in this record, and Mother pleaded length of felony sentence, not the type of felony. But Father does not challenge the juvenile court's finding of the abuse ground for termination under A.R.S. § 8-533(B)(2). Because he does not, we do not "consider whether the trial court's findings justified severance on the other grounds announced by the court." *See Michael J.*, 196 Ariz. at 251 ¶ 27.

¶28 The juvenile court can find termination to be in the child's best interests in two different ways: "if either 'the child would benefit from a severance *or* be harmed by the continuation of the relationship.'" *In re C.R. and A.R.*, 256 Ariz. 170, 175 ¶ 24 (App. 2023) (quoting *Matter of the Appeal in Maricopa Cnty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988)). And as the juvenile court correctly stated, "[i]n most cases, the presence of a statutory ground will have a negative effect on the children." *JS-6831*, 155 Ariz. at 559. But that statement does not mean the existence of a statutory ground makes termination in the child's best interests. The *JS-6831* court explained that "in some cases, this will not be true," so, "it becomes necessary for the juvenile court to weigh the overall best interests of the child against the objective behavior of the parent which constitutes the statutory ground." *Id.*

¶29 The juvenile court did not perform this necessary task. Rather than "weigh the overall best interests of the child against the objective behavior of the parent," *id.*, the juvenile court again noted Father is "currently serving three concurrent prison terms of 17 years, and one prison term of 1 year." The court did not find J.V. would benefit from severance or would necessarily be harmed by having a relationship with Father. *In re C.R. and A.R.*, 256 Ariz. at 175 ¶ 24. More concerning, the court's brief discussion of the crucial issue of J.V.'s best interests consisted of incomplete sentences that found no facts. *See supra* ¶ 19.

¶30          The juvenile court's analysis was inadequate as a matter of law. The juvenile court must support its best-interests conclusion with written factual findings detailing the ultimate facts upon which it relied. *See Logan B.*, 244 Ariz. at 537 ¶ 15. Because the court did not, we vacate its best-interests conclusion and remand for the court to make such findings as are necessary to support its conclusions. We note that there has been no change of judge in this matter, so on remand, Father retains that right. *See* Ariz. R.P. Juv. Ct. 108(c)(4). Because we vacate the termination order and remand for further proceedings, we need not reach Father's constitutional objections to the vacated best-interests finding. *See KPNX-TV Channel 12 v. Stephens*, 236 Ariz. 367, 372 n.3 (App. 2014) ("Because we have resolved the issue on non-constitutional grounds, we need not address the constitutional arguments.").

¶31          Resolution of factual disputes is "uniquely the province of the juvenile court." *Alma S.*, 245 Ariz. at 151 ¶ 18 (quoting *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002)). While the dissent would decide these issues in the first instance, that is not our function. *State v. MacHardy*, 254 Ariz. 231, 236 ¶ 8 (App. 2022) ("It is not our role as a reviewing court to make factual findings."). Together with the dissent, we very much appreciate the gravity of the facts concerning Father's criminal history. And when the juvenile court weighs evidence and makes factual findings on best interests, Father's evidence may fail. But Father has petitioned the family court that he be made responsible to pay support for J.V., to facilitate visits from his kin with J.V., and for contact with J.V. Father also cites his efforts toward rehabilitation in prison, including therapy, schooling, and work toward spiritual growth. The juvenile court may ultimately determine that J.V. would receive no, or little, benefit from what Father now offers. But the juvenile court, not this court, must assess it in the first instance. *See City of Flagstaff v. Ariz. Dep't of Admin.*, 255 Ariz. 7, 14 ¶ 26 (App. 2023) ("[A] court of appeals sits as a court of review, not of first view.") (citation omitted)). We respectfully disagree that the cases the dissent cites support making the initial best-interests decision on appeal here. None of those cases addressed the circumstance here, where Father presented some evidence in his favor on the best-interests issue and the juvenile court failed to make any findings in its discussion of the child's best interests. *See In re C.E.*, --- Ariz. ---, --- ¶¶ 9–11, 573 P.3d 101, 103-04 (App. 2025) (describing juvenile court's best-interests findings); *Brandon K. v. Dep't of Child Safety*, 1 CA-JV 21-0146, 2021 WL 5085338, at *5 ¶¶ 30–33 (Ariz. App. Nov. 2, 2021) (mem. decision). In this circumstance, we should remand for the juvenile court to decide the matter in the first instance. *See Logan B.*, 244 Ariz. at 539 ¶ 22.

**CONCLUSION**

¶**32**        We affirm the court's finding of the ground for termination under A.R.S. § 8-533(B)(2).  We vacate the court's ruling that termination of Father's parental rights is in J.V.'s best interests.  We remand for further proceedings consistent with this decision.  We deny Mother's and the Navajo Nation's requests for fees.  Father is entitled to his costs on appeal, subject to his compliance with ARCAP 21.


**M O R S E**, Judge, concurring in part and dissenting in part:

¶**33**        I join the majority's well-written analysis of the superior court's findings regarding the grounds for termination.  *Supra* ¶¶ 2–27.  But I cannot join the majority's decision to vacate the superior court's best-interests finding and remand for further proceedings.  *Supra* ¶¶ 1, 28–32.  Instead, I respectfully dissent because the majority needlessly delays the inevitable termination of Father's parental rights when "[n]o reasonable evidence supports the . . . conclusion that preserving Father's parental rights" could possibly be in J.V.'s best interests.  *In re C.E.*, --- Ariz. ---, ---, ¶ 21, 573 P.3d 101, 105 (App. 2025), *review denied* (Nov. 25, 2025).

¶**34**        While the superior court's best-interests findings are indisputably lacking, the egregious facts of this case compel the conclusion that J.V. will benefit from termination and be harmed if termination is denied.  In this situation, we should affirm the superior court's decision to terminate Father's parental rights.  *See id.* at ---, ¶ 23; *cf. also Brandon K. v. Dep't of Child Safety*, No. 1 CA-JV 21-0146, 2021 WL 5085338, at *5, ¶¶ 30–33 (Ariz. App. Nov. 2, 2021) (mem. decision) (overlooking erroneous factual best-interests findings when "accurate factual findings in the record sufficiently support the best-interests determination").  Once a ground for termination is established, our "focus shifts to the interests of the child as distinct from those of the parent."  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 285, ¶ 31 (2005)).  "It cannot be that we will readily reverse termination on appeal when there is no evidence that termination is in a child's best interests but fail to order termination on appeal when the only evidence is that termination *is* in a child's best interests."  *In re C.E.*, --- Ariz. at ---, ¶ 25.

¶**35**        Remand is unnecessary when the facts and the law compel only one possible outcome.  *See id.* at ---, ¶ 21; *State v. Goracke*, 210 Ariz. 20, 23, ¶ 12 (App. 2005) (finding remand unnecessary if there are "no conflicting facts or inferences").  Shortly after J.V.'s birth, Father brutally attacked and

stabbed Mother, and stabbed Mother's 14-year old sister while she held J.V. in her arms. *Supra* ¶ 3. Father pled guilty to the attempted second-degree murder of Mother, aggravated assault of the sister, and child abuse of J.V. *Supra* ¶ 3. Father was sentenced to seventeen years in prison and will not be released until after J.V. is eighteen years old. *Supra* ¶ 3. Moreover, Father did not attempt to have any contact with J.V. for over four years after his arrest. *Supra* ¶ 4. Based on Father's violent criminal acts, his long sentence, and his lack of a current relationship with J.V., it is impossible to conclude that the maintenance of Father's parental rights will be in J.V.'s best interests.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR